**RULLAN v. BUSCAGLIA, Treasurer of Puerto Rico, et al.**

**No. 4310.**

Circuit Court of Appeals, First Circuit.

June 14, 1948.

Francis A. Mahony, of New York City (J. J. Ortiz Alibran, of San Juan, Puerto Rico, and Fred W. Llewellyn and Leon, Weill & Mahony, all of Washington, D. C., on the brief), for appellant.

I. Henry Kutz, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Sewall Key and Lee A. Jackson, Sp. Asst. to Atty. Gen., and Mastin G. White, Sol., Department of the Interior, and Irwin W. Silverman, Chief Counsel, Division of Territories and Island Possessions, Department of the Interior, both of Washington, D. C., on the brief), for appellees.

Before DOBIE, MAHONEY, and WOODBURY, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a decision of the Supreme Court of Puerto Rico which, reversing a decision of the Tax Court of Puerto Rico, denied to appellant a specified deduction from his income tax for the year 1942. The essential facts of the case are not in dispute.

Jose, Salvador and Antonio Rullan, brothers, were the principal stockholders of Sucs. de A. Mayol & Co., Inc. On June 19, 1940, Jose and Salvador each sold to Antonio 400 shares owned by them in this corporation, at the par value of $100 a share. There was no written contract but it was agreed that Antonio would pay to Jose and Salvador annual interest at 8% on the whole amount as well as the value thereof, "whenever he wished." The Rullan brothers do not keep any accounting books

and the sale of the shares was entered only in the Stockholder and Transfer Book and in the Journal and Ledger of the corporation. Antonio made no payment to his brothers in the years 1940 and 1941 but in October, 1942, he paid to each one the amount of $7,476.66 as interest payment at 8% annually on the par value of the shares. In his income tax return for the year 1942, Antonio deducted not only these interest payments, but also other payments which he made to his brothers for interest on personal loans. All three of the Rullan brothers filed their returns on the cash basis. Jose and Salvador reported on their returns the interest paid by Antonio to them in 1942 on the value of their shares. Antonio paid the income tax on the dividends which he received on the 800 shares which he had purchased from his brothers. There is no controversy either as to the legitimacy of the transactions or as to the entries appearing on the books of the corporation. The sole question before us is whether or not the interest paid by Antonio to his brothers is deductible from his gross income for the taxable year 1942.

The applicable statute here is Section 16 of Income Tax Act No. 74, approved August 6, 1925, Laws of Puerto Rico 1925, pp. 400, 438, as amended by Act No. 31 of April 12, 1941, Laws of Puerto Rico, 1941, pp. 478, 494–496, which provides:

"Section 16. (a) In computing net income there shall be allowed as deductions:

\*　　\*　　\*　　\*　　\*　　\*

"(2) All interest paid or accrued within the taxable year on indebtedness \* \* \* Provided, That no interest is deductible if it is payable between members of one family \* \* \*."

Appellant's first (and apparently most serious) contention turns upon the meaning of the word "payable" in the tax statute with which we are concerned. This contention is that "payable" means " 'due or accrued and unpaid,' or 'capable of being paid,' or 'to be paid,' and could never properly be so employed to refer to any debt or obligation already paid." We cannot agree that "payable" here has so narrow a connotation. The definitions of the word in dictionaries, general or legal, and its supposed equivalency to the Spanish word "pagadero" shed little light on the problem.

■ True it is, as appellant asserts, that from the pure accounting standpoint, interest which has already been paid is not carried on the books as interest payable. It does not follow, however, that when a tax statute, drawn to operate prospectively as to transactions in the future, employs as to interest the word "payable," this excludes interest that is not only payable but is also paid. Surely interest that is payable during a certain tax year, will according to good commercial practice and ethics, actually be paid during that year. Normally and naturally, interest "capable of being paid" or "to be paid" will be paid during the year in which it is due. Appellant's contention thus lacks reality even under the pure analytical approach.

Direct authority here is noticeably lacking. The closest case which counsel have been able to find seems to be Carlisle v. Commissioner of Internal Revenue, 6 Cir., 165 F.2d 645. In that case, Circuit Judge Simons used this significant language, 165 F.2d at page 648:

"However, inept the phrasing of the 1942 amendment to Sec. 162(b), it would appear that the Congressional purpose was to include in the income of a legatee or beneficiary the income of an estate or trust which received within the taxable year became payable to the legatee or beneficiary in that year, even though part of an accumulation of income paid to the residuary legatee upon termination of the estate.

\*　　\*　　\*　　\*　　\*　　\*

"The contention that even if Congress was motivated by a purpose to tax estate income to a legatee if it is received and is payable during the taxable year it was not its declared purpose to similarly treat estate income paid during the taxable year would seem to be but a play upon words."

See, also, Hart v. Commissioner, 1 Cir., 54 F.2d 848, 852.

Appellant's contention we think, has even less merit when the statute is interpreted in the light of its manifest purpose—the denial of deductions for interest paid by one member of a family to another. Then, it

would seem, it was the manifest purpose of the legislature here to match precisely the exclusion to the grant—that is, by permitting as a general rule the deduction of interest on indebtedness yet to deny this deduction when the interest is paid "between members of one family."

The precise wording of the tax statute is unquestionably inept. In the first part of the statute, the general deduction is granted of "All interest *paid or accrued* within the taxable ·year on indebtedness;" while the proviso excepts interest from such deduction "if it is *payable* between members of one fam:ly." [Italics ours.] It would have been the mark of wisdom on the part of the legislature either to repeat in the excepting proviso the same words "paid or accrued" (used in the general grant of deduction) or to have inserted in the excepting proviso the word "such" between the words "no" and "interest."

■ Yet we must not be deflected from our manifest duty of giving to the statute a fair and practical interpretation by mere inept legislative draftmanship. Section 19 of the Civil Code of Puerto Rico (1930) reads:

"The most effectual and universal manner of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit thereof, or the cause or motives which induced this enactment."

Our views, too, are supported by other sections of this taxing statute which are in pari materia.

In Johnson v. United States, 163 F. 30, 32, 18 L.R.A.,N.S., 1194, Mr. Justice Holmes (sitting in the Circuit Court of Appeals for the First Circuit) remarked:

"The Legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed. The major premise of the conclusion expressed in a statute, the change of policy that induces the enactment, may not be set out in terms, but it is not an adequate discharge of duty for courts to say: We see what you are driving at, but you have not said it, and therefore we shall go on as before."

Equally apt here are two quotations from Judge Learned Hand, who said, in Federal Deposit Insurance Corporation v. Tremaine, 2 Cir., 133 F.2d 827, 830:

"There is no surer guide in the interpretation of a statute than its purpose when that is sufficiently disclosed; nor any surer mark of oversolicitude for the letter than to wince at carrying out that purpose because the words used do not formally quite match with it." .

and, in Cabell v. Markham, 2 Cir., 148 F.2d 737, 739:

"Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; ·but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."

Appellant next attacks the tax statute as it was interpreted below, "because the resulting discrimination is arbitrary, unreasonable and capricious, and because the tax so imposed is confiscatory, unequal, unjust, lacking in uniformity and deprives the taxpayer of property without due process of law, and of the equal protection of the laws, all in violation of the Organic Act."

■■ It is well settled by decisions of this Court that the Organic Act of Puerto Rico 48 U.S.C.A. § 731 et seq., imposes a principle only of geographical uniformity in taxation, not intrinsic uniformity. Ballester-Ripoll v. Court of Tax Appeals, 1 Cir., 142 F.2d 11, 18, certiorari denied 323 U.S. 723, 65 S.Ct. 55, 89 L.Ed. 581. And nothing could be clearer than the words of Circuit Judge Mahoney, speaking for this Court in South Porto Rico Sugar Co. v. Buscaglia, 1 Cir., 154 F.2d 96, 100:

"It is well settled that the *uniformity provision exacts only geographical and not intrinsic uniformity.* [Authorities cited.] Under this rule, uniformity cannot be challenged because of an arbitrary classification unless that classification discriminates on a

geographical basis. A discrimination violates the uniformity provision only where the Legislature discriminates in favor of or against persons in a particular section of the territory." [Italics ours.]

Nor is there any warrant for appellant's description of the tax as confiscatory, unequal, unjust or as violative of the Fifth Amendment to the United States Constitution. Many places in federal tax statutes take cognizance of the close identity of economic interests within the family. Indeed, the cases are legion which manifest the close scrutiny, for income-tax purposes, always given by the Courts to intra-family transactions. See, McWilliams v. Commissioner, 331 U.S. 694, 67 S.Ct. 1477, 91 L.Ed. 1750, 170 A.L.R. 341; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; Wilson v. Commissioner, 4 Cir., 161 F.2d 556; Mauldin v. Commissioner, 4 Cir., 155 F.2d 666: Hash v. Commissioner, 4 Cir., 152 F.2d 722.

 Finally, we think our conclusions find further support in another well known doctrine of law. This doctrine is very clearly expressed in two recent decisions of the United States Supreme Court. Said Mr. Justice Black, in Sancho Bonet v. Yabucoa Sugar Co., 306 U.S. 505, 510, 307 U.S. 613, 59 S.Ct. 626, 629, 83 L.Ed. 946:

"Taxing acts of Puerto Rico are purely local and the traditional reluctance of this Court to overturn constructions of such local statutes by local courts is particularly applicable to interpretations of Puerto Rican statutes by Puerto Rican tribunals. Orderly development of the government of Puerto Rico as an integral part of our government system is well served by a careful and consistent adherence to the legislative and judicial policy of deferring to the local procedure and tribunals of the Island."

And even stronger are the words of Mr. Justice Douglas, in Sancho Bonet v. Texas Co., 308 U.S. 463, 471, 60 S.Ct. 349, 353, 84 L.Ed. 401:

"To reverse a judgment of a Puerto Rican tribunal on such a local matter as the interpretation of an act of the local legislature, it would not be sufficient if we or the Circuit Court of Appeals merely disagreed with that interpretation. Nor would it be enough that the Puerto Rican tribunal chose what might seem, on appeal, to be the less reasonable of two possible interpretations. And such judgment of reversal would not be sustained here even though we felt that of several possible interpretations that of the Circuit Court of Appeals was the most reasonable one. For to justify reversal in such cases, the error must be clear or manifest; the interpretation must be inescapably wrong; the decision must be patently erroneous."

The judgment of the Supreme Court of Puerto Rico is affirmed.