COMMUNITY OF THE HEIRS OF FAJARDO, ETC. ET AL., Petitioners, v. TAX COURT OF PUERTO RICO, Respondent, TREASURER OF PUERTO RICO, Intervener.

No. 272. Argued June 2, 1952.—Decided June 9, 1952.

500

*Andrés Guillemard, Carlos García Méndez, Oscar Souffront* and *A. Ramírez Silva*, for petitioners. *Víctor Gutiérrez Franqui, Attorney General,* and *José A. García Malpica, Assistant Attorney General,* for intervener defendant in the main action.

MR. JUSTICE SNYDER delivered the opinion of the Court.

In *Buscaglia, Treas.* v. *Tax Court, Community of the Heirs of Fajardo, Intervener,* 70 P.R.R. 93, we affirmed the decision of the Tax Court to the effect that the Community was not taxable as a *sociedad* for the years 1938 and 1939 under § 2(a)(3) of the Income Tax Act; but, reversing the Tax Court, we held that the Community was taxable for 1940 as a *sociedad* operating a joint venture, in view of the amendment of § 2(a)(3) found in Act No. 31, Laws of Puerto Rico, 1941, which was made retroactive to January

1, 1940 by § 29 of Act No. 31.[1] We remanded the case in order for the Tax Court to determine whether the Treasurer acted correctly in imposing on the Community a 25 per cent penalty for failure to file a return for 1940 as a *sociedad*, and for further proceedings.

On remand, the Tax Court held that the Treasurer had acted properly in imposing the 25 per cent penalty and in disallowing deductions of interest paid by the Community to the Central Eureka, Inc. We granted the petition for certiorari filed by the taxpayer to review the decision of the Tax Court as to these two questions and as to the method used by the Tax Court to compute the tax.

We examine first the contention of the petitioner with reference to the 25 per cent penalty. As already noted, the petitioner was made taxable for the first time as a *sociedad* operating a joint venture by Act No. 31 of 1941. That Act was made retroactive to January 1, 1940; it therefore applied to the taxpayer's fiscal year ending June 30, 1940. But since Act No. 31 was not enacted until April 12, 1941, the petitioner had of course filed no return on or before September 15, 1940 for the fiscal year 1939–40.[2] However, the Legislature foresaw this contingency. It took care of the situation by providing in § 26 of Act No. 31 that "Every person required to make a return in accordance with the provisions of this Act, as amended, and every person who, for any reason, may have failed to make his return on March 15, 1941, in spite of the fact that he was so required under the Act in force on that date, may make his return within the thirty (30) days following the effective date of this Act and pay the tax corresponding to the taxable year of 1940, and, upon so doing, he shall not incur the penalties pre-

---

[1] Section 2 (*a*) (3), as amended by Act No. 31 of 1941, defines a *sociedad* as including two or more persons engaged in a joint venture.

[2] Under §§ 27 and 39 of the Income Tax Act the petitioner was required to file its return "on or before the fifteenth day of the third month following the close of the fiscal year . . . ".

scribed in the first paragraph of subdivision (2) of Section 77 of this Act."

This means that the taxpayer knew as of April 12, 1941 that it would be required to file a return within four months for the fiscal year 1939–40.[3] The taxpayer never filed the return. Instead, the Treasurer made a return in 1944 from his own knowledge pursuant to § 70 (a) of the Income Tax Act.[4]

■■ In seeking to avoid the penalty for failing to file its return for 1940 pursuant to § 26, the taxpayer relies on § 70 (b) of the Income Tax Act, reading as follows:

"(b) The Treasurer shall determine and assess all taxes as to which returns or lists are so made under the provisions of this Section. In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Treasurer in pursuance of law, the Treasurer shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to wilful neglect, no such addition shall be made to the tax. In case a false or fraudulent return or list is willfully made, the Treasurer, shall add to the tax 50 per centum of its amount."

The petitioner contends that its failure to file a return for 1940 as a joint venture was due to a "reasonable cause and not to wilful neglect . . . ". In support of this contention, it argues as follows: (1) it was uncertain that it was taxable as a joint venture until we reversed the Tax Court and held in favor of the Treasurer on that question;

---

[3] Act No. 31 of 1941 provides in § 29 that it shall take effect ninety days after its approval.

[4] Section 70 (a) reads as follows: "If any person, corporation, partnership company or association fails to make and file to return or list at the time prescribed by law or by regulation made under authority of law, or makes, wilfully or otherwise, a false or fraudulent return or list, the Treasurer shall make the return or list from his own knowledge and from such information as he can obtain through testimony or otherwise. Any ·return or list so made and subscribed by the Treasurer or by any of his duly authorized agents, shall be *prima facie* good and sufficient for all legal purposes."

(2) on the advice of an account, it filed a return as a *sociedad* [5] in September, 1941 for the fiscal year 1940–41 with a view to litigating the question by a suit for refund; (3) counsel for the Treasurer stated at the trial in the Tax Court, apparently in view of previous decisions, that the petitioner was not required to pay income tax as a *sociedad* for 1940 as Act No. 31 of 1941 did not have that retroactive effect in the instant case; (4) the individual returns of the various co-owners reflected their incomes from the petitioner.

We would be required to weigh these arguments and pass on their validity if our statute were similar to the present Federal Act and authorized the Treasurer to forego the penalty where there was a reasonable cause for the failure to file a return. See 10 Mertens, Law of Federal Income Taxation, p. 42 *et seq;* Reisner, Relief from Delinquency Penalties: The Internal Revenue Code, 98 U. of Pa. L. Rev. 183. But the Tax Court correctly pointed out in its opinion that the "reasonable cause" set forth in § 70 (*b*) comes into play only if a return is actually but tardily filed. Where as here no return whatsoever is filed by the taxpayer, the 25 per cent penalty is mandatory. The Supreme Court of the United States interpreted a similar provision in the earlier 1934 Federal Act in this way. "This provision excuses late filing, for reasonable cause, but not complete failure to file." *Commissioner* v. *Lane-Wells Co.,* 321 U. S. 219, 224, footnote 11; 10 Mertens, *supra,* pp. 37–38; Reisner, *supra,* p. 184.

Congress apparently felt that this was a harsh provision. In 1936 it amended the Federal statute to provide that the penalty could be lifted even if no return was filed, provided the failure to file a return was for a reasonable cause. But our statute has not been amended in a similar fashion. We

---

[5] The fact that it changed the word *"sociedad"* in the printed form to "Community" does not change the nature of the return.

are therefore constrained to hold that the 25 per cent penalty automatically attaches upon a mere showing as here of a failure by the taxpayer to file a return at any time.

The second question is whether the Tax Court erred in disallowing the deductions of interest payments made by the Community to Central Eureka, Inc., during 1940 and 1941. Prior to passage of Act No. 31 of 1941, these interest payments would unquestionably have been deductible under § 32(a)(2) of the Income Tax Act.[6] But Act No. 31 amended § 32(a)(2) by adding thereto the following:

*"Provided,* That interest shall not be deductible when payable *between an individual and a corporation or partnership* when the individual owns or controls, directly or indirectly, or through his family, more than fifty (50) per cent of the value of the outstanding stock of the corporation or more than fifty (50) per cent of the social capital, or *between two corporations* when one of them owns or controls more than fifty (50) per cent of the outstanding stock of the other corporation. The definitions of the term family contained in this Act shall be applicable for the purposes of this section." (Italics ours.)

It is undisputed that during 1940 and 1941 the co-owners of the property of the Community owned more than 50 per cent of the outstanding stock of Central Eureka, Inc. The Tax Court therefore held that under the quoted *Provided* clause the Community was not entitled to deduct the interest payments it made in 1940 and 1941 to Central Eureka, Inc., in view of the said stock ownership.

The *Provided* clause does not in terms prohibit deductions of interest payments by a *sociedad* to a corporation. In spite of this omission, the Tax Court disallowed such deductions. Its reasoning may be summarized as follows: Generally speaking, the Income Tax Act treats a *sociedad* in the same way as a corporation. But *cf. Buscaglia, Treas.* v. *Tax*

---

[6] Before the 1941 amendment, which was retroactive to January 1, 1940, § 32(a)(2) permitted without restriction deductions of "All interest paid or accrued within the taxable year on its indebtedness . . . ".

*Court*, 69 P.R.R. 700, 70 P.R.R. 364, affirmed in *Ballester* v. *Descartes*, 181 F. 2d 823 (C. A. 1, 1950). And the amendments to § 32(*a*) (2) and § 16(*a*) (2) in 1941 [7] disclose a general legislative policy against deduction of interest payments when made between members of one family or in other situations involving interlocking relationships. The omission from the 1941 amendment of § 32(*a*) (2) of interest payments from a *sociedad* to a corporation was therefore an oversight and the Legislature did not consciously exclude such payments from the general policy established in § 32(*a*) (2) and § 16(*a*) (2).

We accept the foregoing reasoning of the Tax Court. But we cannot agree that it leads to the conclusion that a *sociedad* was not entitled to deduct interest paid in 1940 and 1941 to a related corporation. We recognize the force of the argument of the Tax Court. But the courts have no authority to write into the *unambiguous* language of a tax statute such as § 32(*a*) (2) a provision which the Legislature, whether deliberately or not, chose to omit. That would be in effect for us to write the tax laws. And that function must always remain in the Legislature.

In rejecting a similar contention in a tax case, the Supreme Court of the United States, in an opinion by Mr. Justice Brandeis, said in *Iselin* v. *United States*, 270 U. S. 245, 250–51: "Its language is plain and unambiguous. What the Government asks is not a construction of a statute, but,

---

[7] Act No. 31 of 1941 established a similar restriction on the deduction of interest in individual returns. It added to § 16(*a*) (2) the following: "*Provided*, That no interest is deductible if it is payable between members of one family or *between an individual and a corporation* with respect to which the individual is the direct or indirect owner of more than fifty (50) per cent of the value of the outstanding stock; or (*c*) *between corporations* with respect to which one same individual or corporation is the direct or indirect owner of more than fifty (50) per cent of the outstanding stock of each of said corporation; or (*d*) are *two. corporations* one of which is the direct or indirect owner of more than fifty (50) per cent of the outstanding stock of the other corporation." (Italics ours.)

in effect, an enlargement of it by the court, so that what was omitted, *presumably by inadvertence,* may be included within its scope. To supply omissions transcends the judicial function." (Italics ours.) To the same effect, 1 Mertens, *supra,* pp. 57–60, and cases cited; *Hartfried Inc.* v. *Commissioner of Internal Rev.,* 162 F. 2d 628 (C. A. 3, 1947) ; *Girard Inv. Co.* v. *Commissioner of Internal Revenue,* 122 F. 2d 843 (C. A. 3, 1941).

The Tax Court relied on *Rullán* v. *Buscaglia,* 168 F. 2d 401 (C. A. 1, 1948), affirming *Buscaglia, Treas.* v. *Tax Court.* 67 P.R.R. 548, and the cases cited therein. And see *Sucn. Pedro Giusti, Inc.* v. *Tax Court,* 70 P.R.R. 109, 126, footnote 9. But in the *Rullán* case this Court and the Court of Appeals merely corrected a grammatical error of the Legislature when under the circumstances we read "payable" as including "paid" in § 16(*a*)(2). Here § 32(*a*)(2) is wholly silent on the subject of interest payments by a *sociedad* to a corporation. We cannot by judicial fiat create a prohibition against a deduction which appears nowhere in the statute. *Cf. People* v. *Mantilla,* 71 P.R.R. 35.

The *Provided* clause in § 32(*a*)(2) was amended by Act No. 107, Laws of Puerto Rico, 1943.[8] The latter amend-

---

[8] The 1943 amendment reads as follows:

"*Provided,* That interest shall not be deductible when payable between an individual and a corporation or partnership, nor the interests payable between a corporation or partnership and an individual, when the individual owns or controls, directly or indirectly, or through his family, more than fifty (50) per cent of the value of the outstanding stock of the corporation or more than fifty (50) per cent of the social capital, or between two corporations when one of them owns or controls more than fifty (50) per cent of the outstanding stock of the other corporation, or between two partnerships, when one of them owns or controls more than fifty (50) per cent of the social capital of the other, or between a partnership and a corporation when said corporation owns or controls more than fifty (50) per cent of the social capital of the former, or between a corporation and a partnership when said partnership owns or controls more than fifty (50) per cent of the outstanding stock of said corporation. The same definitions of the term family, corporation, and partnership contained in this Act shall be applicable for the purposes of this Section."

ment for the first time specifically prohibited a deduction of interest paid by a *sociedad* to a related corporation. The Tax Court asserts that this amendment was merely clarifying and that it only declared existing law. *Cf. Central Coloso* v. *Tax Court*, 70 P.R.R. 62.

We cannot agree that Act No. 107 of 1943 supports the position of the Tax Court and the Treasurer. It does not provide on its face that it is merely a clarifying amendment. Nor does it recite that it shall have any retroactive effect. For all that appears, the Legislature was either establishing new policy prospectively by Act No. 107 or was recognizing that there was a loophole in Act No. 31 which it was closing for future purposes. But under either of these two theories Act No. 107 can not be construed to evince a legislative intent that deductions of interest for previous years were prohibited.

*Descartes, Treas.* v. *Tax Court, Heirs of Cautiño, Interveners,* 71 P.R.R. 230, is distinguishable. We held there that the defect in § 16(a)(2) in failing to include among the prohibited deductions interest paid by an individual to a *sociedad* was remedied by the provision covering such payments in § 32(a)(2), despite the fact that the title of the latter refers only to deductions by corporations and *sociedades*. Our case is quite different. As already noted, there is no provision in § 32(a)(2) or any other Section of the Income Tax Act with reference to interest paid by a *sociedad* to a corporation.

We are aware of the argument that deductions are a matter of legislative grace and should be strictly construed. *Descartes, Treas.* v. *Tax Court, Heirs of Cautiño, Interveners, supra,* p. 236. But the first portion of § 32(a)(2) clearly permits deductions of interest payments without any restrictions whatsoever. And with equal clarity the *Provided* clause does not prohibit such deductions for interest paid by a *sociedad* to a corporation. For the reasons we

have stated, the Tax Court erred in disallowing deductions by the Community for interest paid by it in 1940 and 1941 to Central Eureka, Inc.

 The third question is whether the Tax Court erred in upholding over the objection of the taxpayer the computation filed by the Treasurer.[9] As we have seen, § 29 provided that Act No. 31 of 1941 shall take effect retroactively as of January 1, 1940. On the other hand, § 3(a) of the Income Tax Act, as amended by Act No. 31, provided that "The first taxable year, for the purpose of this Act, shall be the calendar year 1940, or *any fiscal year ending during the calendar year 1940.*" (Italics ours.)[10] The Treasurer contends that these two Sections should be read together and harmonized. *Descartes, Treas. v. Tax Court, Heirs of Cautiño, Interveners, supra; Roig v. Tax Court,* 65 P.R.R. 418. He argues that this is accomplished by (1) calculating the tax for the fiscal year 1939–40 as though the previous law had prevailed during the entire fiscal year; (2) making the same calculation as though Act No. 31 had been in effect during the entire fiscal year; (3) dividing each of these figures by two; and (4) adding the two figures thereby obtained. He asserts that this method of calculation is in accordance with § 10(a) of the Act, which establishes this method for fiscal year taxpayers where "the law applicable to the second calendar year is different from the law applicable to the first calendar year . . . ".[11]

---

[9] Judge Romero dissented from the order of the Tax Court approving the computation filed by the Treasurer.

[10] Section 26 of Act No. 31 of 1941 reinforces § 3(a). It provides that a person shall "make his return within the thirty (30) days following the effective date of this Act and pay the tax corresponding to *the taxable year of 1940* . . . ". (Italics ours.)

[11] Section 10(a) reads as follows: "If the taxpayer makes return for a period beginning in one calendar year (hereinafter in this subdivision called 'first calendar year') and ending in the following calendar year (hereinafter in this subdivision called 'second calendar year') and the law applicable to the second calendar year is different from the law applicable to the first calendar year, then his tax under this title for the period ending during the second calendar year shall be the sum of:

We agree with the Treasurer and the Tax Court that § 29 of 1941 and § § 3 (a) and 10 (a) of the Income Tax Act should be read together, harmonized and applied to the facts of this case. We likewise agree that this is accomplished by taking the four steps just described. But in doing so we come to a different conclusion.

The difficulty lies in the first step. In taking the first step, the Treasurer calculated the tax as though the taxpayer were an ordinary *sociedad* which was in fact subject to taxation during the calendar year 1939 at the then prevailing rate. But the law of the case is that the petitioner was not subject to taxation as a *sociedad* operating a joint venture until January 1, 1940. 70 P.R.R. 93. And since § 10 (a) provides that in taking the first step the tax is calculated "under the law applicable to the first calendar year", the figure arrived at under the law applicable during the calendar year 1939 must necessarily be zero. The result is that under the circumstances of this case the petitioner is required to pay for the fiscal year 1939–40 taxes calculated by treating Act No. 31 as though it had been in effect during the entire fiscal year and dividing by two the figure thereby achieved.[12]

---

(1) the same proportion of a tax for the entire period determined under the law applicable to the first calendar year and at the rates for such year, which the portion of such period falling within the first calendar year is of the entire period; and (2) the same proportion of a tax for the entire period determined under the law applicable to the second calendar year and at the rates for such year, which the portion of such period falling within the second calendar year is of the entire period."

[12] Neither of the parties argues that under the circumstances of this case—which involves a statute enacted after the close of the fiscal year in question—the return should be only for the six months from January 1 to June 30, 1940 for which the petitioner was subject to taxation. *Cf.* § 3 (a) of the Act reading in part that "The term 'taxable year' includes, in the case of a return made for a fraction of a year under the provisions of this title or under regulations prescribed by the Treasurer, the period for which such return has been made"; § 26 of the Act; Articles 67 and 235 of Income Tax Regulations No. 1; *Economy Savings & Loan Co.* v. *Commissioner of Int. Rev.*, 158 F. 2d 472 (C. A. 6, 1946) ; 1 Mertens, *supra*, p. 370 *et seq; Roig* v. *Tax Court*, 65 P.R.R. 418, 423, footnote 9.

The defect in the theory advocated by the Treasurer and adopted by the Tax Court is graphically illustrated by the fact that in applying it the Treasurer necessarily made the first calculation by using the lower rate which applied to an ordinary *sociedad* prior to the effective date of Act No. 31 and by granting credits and deductions which were eliminated by Act No. 31. If the petitioner had been subject to taxation as a *sociedad* during 1939, this method of calculation would have been valid. But there is no basis in § § 3 (*a*) or 10 (*a*) for resorting to a law and rates which have never applied to the petitioner.

*Roig* v. *Tax Court, supra*, is in accord with the view enunciated herein. Act No. 20 of December 3, 1942, providing for increased income taxation, recited in § 11 that "it shall take effect from July 1, 1942 . . .". In the *Roig* case we held, with exceptions not relevant here, that our Act is predicated on an annual earning period; that a calendar year taxpayer was therefore not authorized by § 11 to divide his annual income arbitrarily into two exact halves and to report one-half as earned during the first half of the year and the other half as earned during the second half; and that the method provided in § 10 (*a*) for fiscal year taxpayers which is noted above in detail applied to a calendar year taxpayer even though § 10 (*a*) did not in terms cover calendar year taxpayers. As the petitioner makes its returns on a fiscal year basis, all parties agree that § 10 (*a*) applies here. The only question, as we have seen, is how to take the first of the four steps required by § 10 (*a*). For the reasons stated, we hold that, reading § 29 of Act No. 31 and § § 3 (*a*) and 10 (*a*) of the Income Tax Act together, the tax due for the fiscal year 1939–40 should have been calculated by applying Act No. 31 to the entire fiscal year and then dividing by two the figure resulting therefrom.[13]

---

[13] Naturally, the penalty and interest may be collected only on the amount actually found herein to be due.

 The Treasurer and the Tax Court point out that the deficiency originally notified to the petitioner showed on its face that it was calculated from the very beginning in the manner used in the computation. The Treasurer therefore contends that the objection to the computation was too late since it involved a question of substantive law foreign to those raised by the pleadings rather than a mathematical problem of calculation. The Tax Court, although it agreed with this argument of the Treasurer, also went into the merits of the question raised in the objection to the computation.

In *Buscaglia, Treas.* v. *Tax Court; Arcelay, Intervener*, 67 P.R.R. 12, we said at pp. 14–15: "We wish to emphasize once more, however, that the provision of Rule 29 [of the Tax Court] that a decision is not final until a computation is filed, should not be used to try issues foreign to the question of settling the computation. The hearing on the computation, if any takes place, should be confined to a mathematical dispute. The parties must be made to understand that they cannot litigate piecemeal. They must present their entire case originally. The hearing on the computation must be confined to that issue alone, and cannot be utilized as a device to relitigate issues which were or should have been presented to the Tax Court at the hearing on the merits. *González Padín Co., Inc.* v. *Tax Court*, 66 P.R.R. 909. If either party wishes at that time to raise an issue which should have been litigated in the proceeding itself, the Tax Court should refuse to entertain it, except pursuant to a motion to vacate the decision and to hold a new hearing with suitable amendment of the pleadings. And the Tax Court should grant such a motion rarely and only for the most substantial reasons."

However, where the Tax Court does go into the merits of new substantive questions when a computation is submitted, we have under the circumstances of some cases re-

fused to reverse on that ground, provided the parties had their day in court. We did this at the instance of the Treasurer in *González Padín Co.* v. *Tax Court, supra*, where we said at p. 931. "We emphatically agree with Padín and the Tax Court that the Treasurer should litigate such questions by seeking amendment of the pleadings rather than by submitting a computation, after decision of the case, calculated on a theory different from that on which the case was tried. And the Tax Court should in the future as a matter of orderly procedure require amended pleadings rather·than the submission of a computation involving substantive questions foreign to those raised by the pleadings. But if the taxpayer is given an adequate opportunity to meet the new issue, as it was here, we are unable to see what prejudicial error the taxpayer suffers from the procedure followed here. See *Fiddler* v. *Tax Court*, 65 P.R.R. 189; *Buscaglia, Treas.* v. *Tax Court*, 65 P.R.R. 921."

In this case the Tax Court never reached the question herein at the first trial because it held that the petitioner was not taxable at all for 1939–40. And in our opinion in 70 P.R.R. 93 reversing the Tax Court and remanding the case we held that the petitioner was taxable for 1940 without examining the problem now before us. Under these circumstances, we do not think the Tax Court erred in passing on the merits of the objection made to the computation. We permitted this to be done at the behest of the Treasurer in the *González Padín* case. We see no reason why the taxpayer should not be given the same privilege here. However, once more we point out that normally the Tax Court should take such action only by vacating its decision, requiring amended pleadings and conducting a new hearing.

The judgment of the Tax Court will be affirmed insofar as it provided that the 25 per cent penalty was validly imposed. It will be modified by providing (1) that the petitioner is entitled to deduct interest payments it made to Cen-

tral Eureka, Inc. during 1940 and 1941, and (2) that the petitioner is required to pay only one-half of the tax, interest and penalty for the fiscal year 1939–40. The case will be remanded to the Tax Court for the necessary calculations.