MANUEL VIÑAS SORBA and JORGE E. LÓPEZ RAMÍREZ, Plaintiffs and Appellants, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. R-67-99.     Decided May 12, 1969.

276

*María Genoveva R. Carrera* and *Luis E. García Benítez* for appellants. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor General,* for appellee.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Dávila, and Mr. Justice Torres Rigual.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

Viñas Sorba and López Ramírez, together with another partner, were engaged in the construction business. For the taxable years in controversy (1958 to 1960, both inclusive), they owned the shares indicated below in the following enterprises:

| Corporation | Viñas | López | Other Partner |
|---|---|---|---|
| 1. Vilo Corporation | 50% | 50% | —— |
| 2. Wideland Construction Corp. | 33⅓% | 33⅓% | (33⅓%) |
| 3. Modern Construction Corp. | 41⅔% | 41⅔% | (16⅔%) |
| 4. Condado Enterprises, Inc. | 50% | 50% | —— |

The Secretary of the Treasury ordered an investigation of the returns filed by the partners for the years 1958 through 1960 and, upon termination of the investigation, served notices of income tax deficiencies on the appellants. The taxpayers, alleging error in the Secretary's determination, appealed to the Superior Court and requested the court to set

aside the deficiencies. The court dismissed the complaints, except for certain items of little importance.

The deficiencies notified by the Secretary of the Treasury which are involved in this case are the following:·

### —YEAR 1958—

|  |  | Viñas Sorba | López Ramírez |
|---|---|---|---|
| 1) | Dividends from Vilo Corp. | $45,201.46 | $46,420.00 |
| 2) | Dividends from Wideland Corp. | 14,870.24 | 720.29 |
| 3) | Business expenses (each taxpayer) | 2,000.00 | 2,000.00 |
|  | Total adjustment | $62,071.70 | $49,140.29 |

4) Plus 5% penalty in both cases, § 293 (a).
5) Penalty under § 294 (d) (2) to López Ramírez.

### —YEAR 1959—

|  |  | Viñas Sorba | López Ramírez |
|---|---|---|---|
| 1) | Dividends from Modern Construction Corp. | $34,407.99 | $ 9,054.32 |
| 2) | Dividends from Wideland Corp. | 875.00 | 875.00 |
| 3) | Business expenses (each taxpayer) | 2,000.00 | 2,000.00 |
|  | Total adjustment | $37,282.99 | $11,929.32 |

4) Plus 5% penalty for both taxpayers.
5) Penalty under § 294 (d) (2) to López Ramírez.

### —YEAR 1960—

|  |  | Viñas Sorba | López Ramírez |
|---|---|---|---|
| 1) | Dividends from Modern Construction Corp. | $11,977.50 | $17,977.50 |

| 2) Business expenses | $ 2,500.00 | $ 2,000.00 |
|---|---|---|
| Total adjustment | $14,477.50 | $19,977.50 |

3) Plus 5% penalty for both taxpayers, § 293 (a).
4) Penalty under § 294 (d) (2) to López Ramírez.

The items from which the deficiencies attributed to the appellants arise are divided into three main categories: (a) constructive dividends, (b) business expenses, and (c) penalties.

—YEAR 1958—

On December 16, 1958, Vilo Corporation issued two checks in favor of Condado Enterprises for a total amount of $92,840 in order for the latter to acquire a lot. An amount equal to half of that sum, that is, $46,420, was charged to the account of each appellant with Vilo Corporation. A credit for a similar amount in favor of each appellant was entered on the books of Condado Enterprises. Condado Enterprises acquired the lot. On May 31, 1959, five months after the original entry, the external auditor made a correction in the books of Vilo Corporation eliminating from appellants' accounts the amounts charged and, in lieu thereof, the total amount of $92,840 was charged to Condado Enterprises. However, no change was made in the books of Condado Enterprises, which continued recognizing a $46,420 credit in favor of each appellant. In 1960, when Condado Enterprises was liquidated, the lot, its only asset, was awarded to Viñas and López. On their 1960 income tax returns the appellants reported capital gains on the acquisition of the lot and, in order to determine the gain, claimed their loan to Condado Enterprises as part of the cost of the lot. No collateral warranty was offered to guarantee reimbursement of the amount withdrawn from Vilo Corporation and no interest was charged for such amount. In 1958, Vilo had an accumulated surplus of $146,444.03, but no declaration of dividends was made.

The Secretary of the Treasury classified this transaction as a constructive dividend paid by Vilo Corporation to its two sole stockholders who, in turn, lent the money to the Condado Enterprises. Due to the fact that the account of Viñas with Vilo had a $1,218.54 credit in favor of Viñas, he was attributed a dividend of only $45,201.46, while the whole item of $46,420 was attributed to López.

Appellants allege that the transaction was a loan made by Vilo Corporation directly to Condado Enterprises and that the original entries in the books charging the amount involved to appellants were erroneous. In the alternative, they contend that if it is determined that it is a payment to the stockholders, such payment was made as a loan, and not as a distribution of dividends.

After hearing and weighing all the evidence furnished, the trial judge concluded that the case dealt with a distribution of dividends in favor of appellants, who, in turn, lent the money to the Condado Enterprises. Appellants insist that the court erred in reaching this conclusion and that the transaction was actually a loan made by Vilo Corporation directly to Condado Enterprises or, in the alternative, to appellants.

The determination of the trial judge must be sustained unless there is not sufficient evidence in the record to support it. *Buscaglia, Treas.* v. *Tax Court,* 69 P.R.R. 477, 479, (1949) ; *Clínica Juliá* v. *Sec. of the Treasury,* 76 P.R.R. 476, 495 (1954) ; *Casanovas & Cía., Sucrs., Inc.* v. *Court of Tax Appeals,* 61 P.R.R. 630, 631 (1943).

██ Appellants' contention that it was a question of a loan made by Vilo Corporation directly to Condado Enterprises is gainsaid by the entries in the books of the two corporations involved. In the books of Vilo the amount involved was originally charged to both appellants, not to Condado Enterprises, and in the books of Condado Enterprises it was credited in favor of appellants, not Vilo. Bookkeeping entries are not conclusive evidence of the transactions entered and

where they conflict with the facts, they must give way before the latter. I Mertens, Law of Federal Income Taxation, § 9.06. As we stated in *Inter-American Orange Crush* v. *Sec. of the Treasury*, 81 P.R.R. 286 (1959), citing previous decisions, ". . . the determination of the taxable income 'rests on actual facts and not on theories, technicalities, or bookkeeping entries.' " See also, *Vilanova* v. *Sec. of the Treas.*, 83 P.R.R. 72, 89 (1961). The controlling factor is the intention of the parties as it arises from the facts. *Cf. Krueger* v. *Sec. of the Treas.*, 89 P.R.R. 338, 347 (1963).

However, the facts and circumstances in this case tend to sustain the entries in the books and to deny appellants' contention that this was a case of a loan made directly by Vilo Corporation to Condado Enterprises. The Board of Directors of Vilo Corporation approved a "loan" to appellants for the amounts involved. When Condado Enterprises was liquidated its only asset, the lot, was awarded to appellants and not to Vilo Corporation. In 1960, when appellants reported capital gains from the acquisition of the lot, both of them claimed, as part of the cost, their loan to Condado Enterprises. Therefore, the court acted properly in disregarding appellants' theory that this was a case of a loan made directly by Vilo Corporation to the Condado Enterprises.

Also, the facts do not support the alternative theory advanced by appellants that a loan was made to them by Vilo Corporation. On the contrary, the evidence tends to support the Secretary of the Treasury's determination that the transaction was an informal distribution of dividends to appellants. It is unimportant that there was not a formal declaration of dividends. ". . . a distribution may be considered as a dividend even if no dividend has been formally declared by the board of directors. . . ." *Central Igualdad, Inc.* v. *Sec. of the Treas.*, 83 P.R.R. 44, 55 (1961); see Mertens, *supra*, § 9.12; *Republic Nat. Bank of Dallas, Adm.* v. *United States*, 1 Am. Fed. Tax R. 2d 755 (1957). The appellants did not offer any

collateral warranty or pay interest for the withdrawals, and when Vilo Corporation paid its stockholders, it had an accumulated surplus of $146,444.03. No dividends were declared for that year. Also, no plan or method of payment was agreed upon. All these facts tend to indicate that this was a case of a dividend and not a loan. In *Fernández* v. *Sec. of the Treas.*, 95 P.R.R. 417 (1967), we faced a similar controversy. We stated there that "The most important factor in the solution of the problem we are confronting is the intent with which the withdrawals were made, and more concretely, whether at the time they were made it was intended to repay them to the corporate assets. . . . are important circumstances to be considered (1) when a closely-held or family corporation is involved, the degree of control of the stockholder; (2) the proportion of withdrawals to stockholdings in the corporation; (3) whether notes or other documents have been executed to evidence the debt; (4) whether interest has been agreed upon, charged or paid; (5) whether credits have been made to the principal; (6) whether despite there being available surplus, dividends in cash have not been declared." By applying these rules to the facts under our consideration, we have to conclude that there was a distribution of profits.

Appellants contend that they credited amounts to their accounts, which is an indication of a loan. The court considered the items that appellants contend are credits to their accounts. After analyzing the situation, the court concluded that "in view of the existence of the above facts of lack of collateral, absence of interest, lack of a plan for instalment payments or intention to repay, there being sufficient accumulated surplus, and the absence of a declaration of dividends, the court decides that there was no intent to make credits against such items and that it was a question of constructive dividends."

Viñas is charged with having received three different sums from Wideland: $15,000, $720.29, and $249.95, making a total of $15,970.24, from which $1,100, the value of a motor

vehicle delivered by Viñas to the corporation, is deducted. Therefore, the total of the dividends attributed to Viñas as received from Wideland is $14,870.24. On the other hand, López is charged with having received $720.29. The different transactions involved are, in detail, as follows:

Wideland Corporation issued a $15,000 check in favor of Viñas, charging such amount to his account. Viñas cashed the check. During the investigation and in the complaint it was alleged that appellant received the money as a loan. Later, for the first time during the hearing before the court, it was alleged that this had to do with a credit for construction equipment sold by Viñas to Wideland, and that the charge to Viñas' account was an error. In 1958, Wideland had a $64,844.70 accumulated surplus and did not declare dividends for that year. To sustain his contention, taxpayer Viñas presented in evidence a check for $15,000, which appears as issued as a "credit to the construction equipment account," and a copy of the stub of said check which also reads as above. Viñas also furnished a list of equipment with a value of $41,500 together with another check issued by another corporation of those controlled by Viñas and López. This check, dated October 26, 1959, was issued in favor of Viñas for the amount of $26,500. He explained that this payment was for the same equipment on which Wideland had already paid $15,000, and that now the other corporation was receiving the equipment and paying the balance of the debt. The Superior Court analyzed the evidence offered and did not give credit to the sale of the equipment theory because of certain discrepancies in the evidence. The court decided also that the withdrawal made by Viñas was not a loan but a dividend paid by Wideland. It is convenient to point out that in this case no interest was paid or collateral determined to guarantee the alleged loan. In rejecting this evidence the trial judge stated:

". . . In spite of the fact that more than one year had elapsed between one check and the other, and despite the alleged exist-

ence of the list of the equipment with the same date as the second check, and that both checks allegedly had a note on their face indicating that they were credits for the purchase of equipment, both checks were charged to Viñas, and at the conclusion of the investigation on May 4, 1962, no correction had been made, although Clavell, the external auditor, had revised the books.

"The inspector testified before the court that the plaintiff's accountant had informed him that this had to do with a loan and did not show him the list of the equipment nor the checks offered to the court during the hearing.

"After a thorough and careful consideration of the evidence and the testimony offered, this court gives no credit to the allegation that this is a case of a sale and decides that it was a cash withdrawal, and due to the circumstances already stated of lack of a payment or credit plan, absence of collateral, lack of interest, and the existence of surplus, declares this item constructive dividends."

Also, appellant contends that Wideland is a corporation owned by three stockholders, each one having one third of the total stock, and that it is unreasonable that a dividend of $15,000 be paid to one of the stockholders, and that no payment be made to the other two. We have already stated before a similar contention, that "the lack of this mathematical proportion is not controlling, since a distribution may be considered as a dividend even if . . . the disbursement is not made proportionate to the holdings of each stockholder in the capital stock, and even when there are stockholders who do not participate in the distribution." *Central Igualdad, Inc.* v. *Sec. of the Treas., supra* at 55; also authorities cited therein; and *West India Mach.* v. *Sec. of the Treas.,* 89 P.R.R. 113, 124 (1963); Mertens, *supra,* § 9.11.

Wideland Corporation issued a $3,601.44 check in favor of Electrical Construction, Inc. The sum of $720.29 was charged to Viñas and to López. The Secretary classified this transaction as a $720.29 payment of constructive dividends to each appellant. (This is the only payment made by Wideland affecting López in 1958.) Appellants contend that this was a

loan made to them by Wideland. The trial court decided also that this was a payment of dividends. This item was not discussed before the court nor was evidence furnished to gainsay the entries in the books. The court based its determination on the same facts mentioned above: lack of collateral warranty, absence of payment of interest, accumulation of surplus, entries in the books, and credibility of the evidence. It has not been shown that the court erred in deciding that the $720.29 item charged to each one of the partners represented a distribution of profits.

The last payment made by Wideland in 1958 is a check issued in favor of Sears Roebuck in payment for machinery acquired by Viñas, valued at $249.95. This amount was charged to Viña's personal account. He contends that this was a loan. This item was not discussed before the trial court and a decision that it constituted a dividend payment to Viñas was reached for the reasons stated in considering the former transactions. This determination is also sustained.

## —YEAR 1959—

■ Modern Construction paid to the Secretary of the Treasury the sum of $8,059.76 owed by Viñas and $8,880.22 owed by López for income taxes which the corporation did not withhold from the salaries paid to Viñas and López. For the same reasons, Wideland paid the Secretary $875 for each appellant. These amounts were charged to each appellant's account. On August 31, 1959 Modern Construction had an accumulated surplus of $123,493.96 and Wideland of $156,382.37. Neither of the corporations declared dividends that year. The trial court sustained the determination of the Secretary of the Treasury that the payment of the tax by the corporation is equivalent, in effect, to the payment of dividends to appellants. The latter contend that the court erred because the law requires every employer to withhold from the salaries paid to its employees the tax payable by the re-

cipient of the salary. According to this theory the obligation to pay the tax falls on the corporation, not on the employee. "Every employer making payment of wages shall deduct and withhold upon such wages a tax. . . ." 13 L.P.R.A. § 3141(b). "Every person required to deduct and withhold any tax under this section shall make return thereof and pay such tax to the Secretary. . . ." 13 L.P.R.A. § 3141(i). "The employer shall be liable to the Secretary for the payment of the tax required to be deducted and withheld under this section, and shall not be liable to any other person for the amount of such payment." 13 L.P.R.A. § 3141(k). The corresponding section of the Regulations provides in part: "Every person required to deduct and withhold the tax .... from the wages of an employee is liable for the payment of such tax whether or not it is collected from the employee. If, for example, the employer deducts less than the correct amount of tax, or if he fails to deduct any part of the tax, he is nevertheless liable for the correct amount of the tax. . . . The employer will not be relieved of his liability for payment of the tax required to be withheld unless he can show that the tax . . . has been paid." 13 R.&R.P.R. § 3141-(k)–1. All these provisions support the appellants' theory that the corporation was bound to pay the tax. This is true, but the employee (the taxpayer) is equally bound. Section 11 of the Income Tax Act of 1954 provides that "there shall be levied, collected and paid for each taxable year upon the net income of every individual a normal tax. . . ." (13 L.P.R.A. § 3011.) Sections 51 and 56 of the Act (13 L.P.R.A. §§ 3051 and 3056) compel individuals, including recipients of salaries, as are appellants, to file returns and pay the taxes computed on their net income (13 L.P.R.A. §§ 3011 and 3012). The tax deducted and withheld shall not be allowed as a deduction to the recipient of the income in computing net income. (13 L.P.R.A. § 3141(n).) In other words, the employee is bound to pay a tax computed on his net income including the amount deducted and withheld by the employer. But for the employee

"the amount deducted and withheld as tax . . . upon the wages . . . shall be allowed as a credit to the recipient of the income against the tax imposed. . . ." (13 L.P.R.A. § 3035.) But this credit against the tax that an employee, as well as any individual, is compelled to pay, may be taken only if the employer actually withheld the tax. It thus appears more clearly in the pertinent provisions of the Regulations: "The tax deducted and withheld at the source upon wages . . . is allowable as a credit against the tax imposed by this Act upon the recipient of the income. If the tax has actually been withheld at the source, credit or refund shall be made to the recipient of the income even though such tax has not been paid over to the Commonwealth by the employer." 13 R.&R.P.R. § 3035–1. Since the tax has not actually been withheld at the source, appellants did not have the right to take credit, as they did, for this item.

▪ ■ Therefore, the corporation, as alleged by appellants, as well as the appellants themselves, as alleged by the Secretary of the Treasury and decided by the trial court, were bound to pay the tax. Until the tax was paid, appellants were liable as individuals subject to the payment of the tax, and Modern Construction and Wideland were liable as employers who violated their obligation to withhold at the source. In a situation like this one, where the tax is not withheld, the obligation to pay falls on the employed individual from whom the tax should have been withheld, as well as on the corporation which should have withheld the tax.

■ Irrespective of who was liable for the payment of the tax, it is clear that the amounts paid to the Secretary of the Treasury constitute dividends. It is an unquestionable fact that Viñas received from Modern Construction $8,059.76, and López $8,880.22, in excess of the amounts they should have received as salaries. We have stated that the corporations paid appellants their whole salaries without any withholding or de-

ductions. The corporation, in paying the tax without deducting it from appellants' salaries, made an additional payment of profits, that is, dividends to appellants.

The other important item among the withdrawals made by Viñas in 1959 is a check for $26,500 issued by Modern Construction in his favor. This amount was charged to the stockholder-taxpayer as a loan on the books of the corporation and it was so alleged in the complaint, although, as in the items considered above, no interest was charged or collateral warranty required. On August 31, 1959, the corporation had an accumulated surplus of $123,493.96, which one year later was increased to $381,580.95. No dividends were declared for said years. The trial court sustained the Secretary of the Treasury's determination to the effect that the $26,500 constituted a payment of dividends by the corporation to Viñas. For the first time appellant contended in the hearing that the entries in the books charging that amount to Viñas were erroneous, since Viñas received that money in payment for certain construction equipment. He maintains that the payment corresponds to the balance of the debt for the same equipment involved in the transaction considered before, which equipment Wideland transferred to Modern, which took over the obligation to pay the balance of the debt, that is, $26,500.

What we previously set forth regarding the payment of the $15,000 is likewise applicable to the payment of the $26,500 in 1959.

The Secretary determined that Viñas received dividends amounting to $34,431.57 in 1959. The court decided that they amounted to $34,407.99. The court credited a small item that the Secretary had included as dividends.

Another item of the total of the alleged dividends received by López from Modern arises from a charge of $254.10 made to the account of López on the books of the corporation. Appellant contends that it was a case of a loan. There is nothing

involved in this item which may distinguish it from those previously considered.

—YEAR 1960—

The Secretary of the Treasury attributed $11,977.50 to Viñas and $17,977.50 to López, as constructive dividends received from Modern Construction during 1960. The transactions involved are set forth hereinafter.

■ The first transaction for 1960 involves a check for $15,000 issued by Modern in favor of Miguel Martorell, Jr., and Milton Rúa. At the time of the payment an entry was made on the books of the corporation charging the $15,000 to the account "land," explaining that it was a partial payment for the purchase of a lot. Eleven months later, a correction was made crediting $15,000 to "land" and charging $7,500 to the personal account of each appellant. During the investigation the inspectors were told, and it was later alleged in the complaint, that this was a loan made by the corporation to appellants. Later, during the hearing before the court, it was contended that this was the payment of an option in favor of Modern to buy a lot. A letter to this effect signed by Martorell and Rúa, the owners of the land, was offered in evidence. The Superior Court did not accept neither the theory of an option to buy nor the theory of a loan, instead, attributed dividends to appellants for the amount in question.

Appellants contend that this was a payment made by the corporation for an option to buy a lot. They complain that the "court seemed to believe that it was incumbent upon the plaintiffs to bring proof of the result of the option." However, the documents offered in evidence by appellants themselves do not sustain their theory of the payment of an option to buy the lot. The letter of Martorell and Rúa acknowledging receipt of the $15,000 check offered in evidence states, "you [Modern Construction] shall erect a condominium on said lot and you

shall pay the remaining of the purchase price by ceding us apartments in said building." Similarly, the check used for the payment now in controversy, states: "Partial Payment of the lot in the Condado."

The documentary evidence offered by plaintiffs themselves does not sustain their theory of an option to buy. The original entries in the books show that this was a case of a partial payment for the purchase of the lot. At the time of the payment, the amount of $15,000 was charged to the account "land," explaining that it was for the purchase of a lot. Eleven months later, the entries were modified by crediting $15,000 to land and charging $7,500 to the account of each appellant. It appeared so twenty months later. The inspector of the Treasury was informed that it was another loan made by the corporation to its stockholders and it was so alleged in the complaints. The theory of the payment of an option to buy appeared for the first time in the hearing of the case. Undoubtedly, this is a case of a partial payment of the purchase price of the lot.

During 1960, Modern issued again several checks in favor of the Secretary of the Treasury in payment of the stockholders' income taxes, which were not withheld by the corporation. Modern issued two checks, each one for the sum of $2,902.50, charging one check to the account of each appellant, and later, the corporation issued two more checks, each one for $1,575, which were similarly charged, making a total charge of $4,477.50 to each stockholder. The court determined that the payment of such sum constituted a distribution of constructive dividends by Modern. Appellants contend that this determination is incorrect, relying on the same grounds which we have previously considered and rejected.

Modern Construction issued a check for the sum of $6,000 in favor of appellant López, charging said amount to his personal account. Appellant contended that this payment constituted a loan made to him by the corporation. The court sus-

tained the determination of the Secretary of the Treasury that it had to do with the payment of a constructive dividend. Applying the factors that we stated in *Fernández*, to determine whether this transaction constitutes a loan or a dividend, we must conclude that the trial court was correct in concluding that this amount also constituted a distribution of profits.

In addition to the above items arising from the alleged constructive dividends received by appellants, traveling and business expenses claimed by both appellants and denied by the Secretary are in controversy. These items shall be jointly considered because they involved similar questions of law and they arise from similar facts.

For 1958 and 1959, each appellant claimed $2,000 as business expenses incurred for the benefit of the corporations. For 1960, Viñas claimed $2,500 and López $2,000. For the three years involved, Viñas claimed a total of $6,500 and López $6,000. The Secretary denied all the deductions so claimed for lack of supporting evidence. He contends that these were expenses of the corporations as such and that the corporations had claimed business expenses in their returns. The trial court sustained the Secretary's determination and denied the deduction claimed. The court pointed out that no evidence or voucher of the expenses was furnished and that the corporations in their returns claimed and were allowed business expense deductions. The court concluded that the expenses involved are expenses of the corporation deductible only by the corporation on its returns, but not deductible by the corporation's officers. It is necessary to recall two basic rules stated in *Central Igualdad, Inc.* v. *Secretary of the Treasury, supra* at 49. Deductions, because they are a grant of the legislature, must be restrictively construed. See, also, *Clínica Juliá* v. *Sec. of the Treas., supra; Treasurer of Puerto Rico* v. *Tax Court*, 73 P.R.R. 450 (1952); *Buscaglia, Treas.* v. *Tax Court*, 67 P.R.R. 548 (1947), *aff'd*, 168 F.2d

401 (1948). It is up to the taxpayer to establish his right to the deduction claimed. *Central Igualdad, supra.*

■ The absence of bills, vouchers, invoices, receipts, and other records does not automatically destroy the right to claim an ordinary and necessary business or traveling expense deduction. If any other admissible and creditable evidence shows that such expenses were actually incurred, a deduction must be granted based on what ordinarily, and in the light of all the circumstances of the case and the taxpayer's business, constitutes a reasonable traveling or business expense. *Carrión* v. *Treasurer of P.R.*, 79 P.R.R. 350, 357–358 (1956) ; *West India Mach.* v. *Sec. of the Treas., supra* at 126–127. In the two cases cited above, although some other evidence was offered, the principal evidence furnished to sustain the deduction claimed was the personal testimony of the executive of the corporation. *Carrión, supra* at 352 and 353, especially footnote 1 on page 353; *West India Mach., supra* at 127.

■ Also, the court pointed out that the corporations in their returns deducted some traveling and business expenses. This fact, per se, would not destroy appellants' claim. In case of other expenses which are not a repetition of those deducted by the corporations and which were actually incurred by the taxpayers for the benefit of their business, such expenses would be deductible regardless of the fact that the corporations had claimed their own business expenses.

■ Now then, in order for the expenses to be deductible as a business expense, they have to be incurred for the business of the taxpayer claiming the deduction. If the expense is incurred in connection with someone else's business, then it is not deductible. A corporation and its stockholders are separate and different tax entities. The fact that a payment made by a stockholder or director for the corporation may benefit him personally, does not usually permit the stockholder or director to deduct it as a business expense. He would have

to prove that in the fulfillment of his office it was his duty to incur the expenses which were not refundable by the corporation. See, Mertens, *supra*, §§ 25.12 and 25.88, and *Charles W. Nichols*, par. 63,148 P-H Memo TC.

■ If appellants incurred expenses connected with the business of the corporations and for the benefit of the corporations, those expenses would be deductible by the corporations if they are reimbursed to appellants, but they would not be deductible by the latter, unless they had proved that it was their duty as officers of the corporation to incur such expenses, and that these expenses were not refundable. Since the expenses in question were incurred by appellants for the benefit of the corporations and not their own businesses, therefore they are not deductible by them.

■ The Secretary of the Treasury levied a 5% penalty on appellants of the total amount of the deficiencies because he considered that the deficiencies arose because of negligence or intentional disregard of the rules and regulations. Section 293, Income Tax Act of 1954, 13 L.P.R.A. § 3293(a).[1] The trial court sustained this determination. Appellants challenge it alleging that they believed they were acting within their rights. The decision on this question depends on whether or not after considering all the facts and circumstances, it is concluded that there was negligence or intentional disregard on the part of the appellants at the time of paying the taxes. See, *Fiddler* v. *Sec. of the Treas.*, 85 P.R.R. 302, 314 (1962).

---

[1] This section provides:

"(a) *Negligence.*—If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, except that the provisions of section 3292 of this title, relating to interest on deficiencies, shall not be applicable.

"(b) *Fraud.*—If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid."

■ Each case has to be decided on its own merits and circumstances, *Fiddler* v. *Sec. of the Treas.*, *supra.* The obligation to pay the taxes arose from the books of the taxpayer and this obligation was not fulfilled. *Cf. Vilanova* v. *Sec. of the Treas.*, *supra* at 89. It is true that in the hearing of the case it was alleged that the entries in the books were erroneous, etc. Even assuming that it is determined that there was no negligence in regard to all the items of deficiency, negligence or intentional disregard in connection with one item is sufficient to impose the penalty on all the deficiencies found. The fact that only part of the deficiency was due to negligence is irrelevant. If there was negligence regarding any item of a deficiency, the penalty shall be levied on the total amount of the deficiency. We decided so in *Quiñones* v. *Sec. of the Treas.*, 77 P.R.R. 100, 102–104 (1954). Certainly, from the foregoing, we are constrained to conclude that the obligation to include the items which gave rise to the deficiencies notified appears from the books of the taxpayers.

■ Another additional penalty was imposed only on appellant López for each of the years in question. Said appellant filed a declaration of estimated tax—according to the provisions of § 58(a) of the Act (13 L.P.R.A. § 3058(a)) —which was much less than the tax as determined later. The penalty provided by § 294(d)(2)[2] of the Income Tax Act of 1954 (13 L.P.R.A. § 3294(d)(2)) was thus levied. Appellant argues that the estimated tax was so low as a result of the nature and *modus operandi* of his business, which operated

---

[2] Said section provides:

"(2) *Substantial underestimate of estimated tax.*—If 80 per centum of the tax (determined without regard to the credits under sections 3032 and 3035 of this title), in the case of individuals other than farmers exercising an election under section 3060(a), of this title . . . exceeds the estimated tax (increased by such credits), there shall be added to the tax an amount equal to such excess, or equal to 6 per centum of the amount by which such tax so determined exceeds the estimated tax so increased, whichever is the lesser."

on the basis of contracts which could or could not have been carried out.

Even accepting this allegation and giving appellant the benefit of the doubt, the estimated tax was so extremely low that he could not be exempted from such penalty. Let us see.

López filed a $500 estimated tax for 1958. In his final return he reported an $8,612.22 tax with withholding at the source amounting to $2,974.40 which, when added to the $500, totals $3,474.40. The estimated amount is undoubtedly exceedingly low. It is not even close to 80% of the final tax. The law provides that if the estimated tax paid is less than 80% the penalty shall be imposed. See footnote 2.

For the year 1959 something similar happened. López reported and paid an estimated tax of $200. The final return showed a tax of $5,755.89. For the same reasons stated for 1958, the penalty lies.

For 1960, López reported an estimated tax of $1,000. The final tax reported in his return was $22,908.25. That is, the estimated tax was less than 5% of the final tax reported, which was later adjusted to $37,632.12. It is clear that the penalty should be imposed.

For all the reasons stated, the judgments appealed from must be affirmed.