Eulogia G. de Roig, peticionaria, *v.* Tribunal de Contribuciones, demandado. J. Adalberto Roig v. El Mismo. Antonio Roig v. El Mismo.

Núms. 57, 58 y 59.—*Sometidos:* Noviembre 5, 1945. *Resueltos:* Noviembre 29, 1945.

*James R. Beverley, R. Castro Fernández* y *J. López Baralt,* aboga-
dos de los peticionarios; *Hon. Procurador General É. Campos
del Toro* y *A. D. Marchand Paz,* abogados del interventor, Teso-
rero de Puerto Rico, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tri-
bunal.

La Ley núm. 20 de diciembre 3, 1942([1]) proveía un au-
mento en los tipos de la contribución sobre ingresos, espe-
cialmente en cuanto a la contribución adicional (Secciones 3,
4, que enmendaron las secciones 12, 13 de la Ley de Contri-
buciones Sobre Ingresos) y disponía que (sección 11) "ten-
drá efecto a contar del día 1 de julio de 1942 . . . ".

J. Adalberto Roig, Antonio A. Roig y Eulogia de Roig
prepararon sus planillas para 1942 a base de un año natu-
ral. Primeramente dividieron sus ingresos entre dos; en-
tonces asignaron la mitad como ingreso devengado desde
enero 1 a junio 30; finalmente, calcularon la contribución
para dicho semestre a los tipos provistos en las secciones 12
y 13 que regían antes de la aprobación de la Ley núm. 20.([2])
De igual manera, los contribuyentes asignaron la otra mitad
de sus ingresos al segundo semestre del año 1942, pero cal-
cularon la contribución para el segundo semestre a base de
los nuevos tipos fijados en la Ley núm. 20.

Una vez hechas las deducciones y los créditos permiti-
dos por la ley, los Roig informaron que sus ingresos netos
para 1942 sujetos a contribución ascendían a $156,779.32,
$154,310.45 y $41,521.28, respectivamente. Calculando su con-
tribución en la forma aquí indicada, pagaron como contri-
bución sobre ingresos para 1942 las sumas de $73,569.08,
$73,406.13 y $8,344.05. Más tarde, el Tesorero les notificó
deficiencias ascendentes a $18,246.98, $18,155.53 y $5,845.90.

---

([1])Leyes de P. R., Sesión Extraordinaria, 1942, pág. 97.
([2])Ley núm. 159, Leyes de P. R., 1941 ((1) pág. 973); Ley núm. 23,
Leyes de P. R., 1941, Sesión Extraordinaria (pág. 73).

La base de estas deficiencias es la contención del Teso-
rero de que los contribuyentes debieron haber calculado sus
contribuciones (*a*) tomando el ingreso para todo el año; (*b*)
calculando la contribución al tipo anterior, y también al tipo
nuevo; (*c*) dividiendo cada una de estas cantidades por dos;
y (*d*) sumando las dos cifras obtenidas con esta operación.
El Tribunal de Contribuciones sostuvo la actuación del Te-
sorero. Expedimos el auto de *certiorari* para revisar las
decisiones del Tribunal de Contribuciones.(³)

■■ En los comienzos del caso, encontramos un punto
fatal en la posición del contribuyente. Nada hay en la Ley
de Contribuciones Sobre Ingresos o en sus enmiendas que
le permita dividir arbitrariamente su ingreso anual en dos
mitades iguales y reportar una mitad como devengada du-
rante el primer semestre y la otra mitad durante el segundo
semestre. Por el contrario, nuestra Ley, igual que la Ley
Federal, está predicada en un período *anual* para devengar
el ingreso. Secciones 3(*a*), 14(*b*), Ley de Contribuciones
Sobre Ingresos.(⁴) Con excepciones que no vienen al caso

---

(³) Toda vez que estos tres casos envuelven la misma cuestión, nos referi-
remos en adelante a los contribuyentes en singular.

(⁴) La sección 3(*a*) dice en parte como sigue:

"El término 'año contributivo' significará el año natural o el año econó-
mico que termine dentro de cada año natural sobre cuya base será computado
el ingreso neto, de acuerdo con las secciones 14 ó 30. El término 'año econó-
mico' significará un período de contabilidad de doce (12) meses que termine
el último día de cualquier mes que no sea diciembre. . . . El primer año con-
tributivo, a los efectos de esta Ley, será el año natural de 1942, . . ."

La sección 14(*b*) dice en parte como sigue:

"El ingreso neto será computado sobre la base del período anual de con-
tabilidad del contribuyente (año económico o año natural, según sea el caso)
de acuerdo con el sistema de contabilidad usado regularmente por el contribu-
yente en sus libros; . . . Si el período anual de contabilidad del contribuyente
es otro que el de año económico, según se define en la sección 3, o si el con-
tribuyente no siguiera un período anual de contabilidad o no llevare libros,
el ingreso neto será computado a base del año natural."

Las secciones 12 y 13 son al mismo efecto. Al disponer los tipos de con-
tribución, siempre los han impuesto "por cada año contributivo". Y la sec-
ción 16 permite como deducciones los gastos pagados o incurridos "durante el
año contributivo".

aquí, tanto las disposiciones específicas como la filosofía de la Ley de Contribuciones Sobre Ingresos prueban con claridad que el caudal de ingresos es separado y medido para fines contributivos entre dos fechas que cubren un año completo, ya sea éste natural o económico (*Heiner* v. *Mellon,* 304 U. S. 271, 275; 2 Mertens, *Law of Federal Income Taxation,* sección 1206, págs. 137-8; sección 13.01, págs. 360-63; sección 13.07, pág. 370).

La médula del argumento del contribuyente es que la Legislatura, al meramente disponer que la Ley núm. 20 fuera retroactiva a julio 1, 1942, quiso decir que se permitiera a un contribuyente de año natural que calculara su contribución para 1942 en dos mitades, empleando un período de contabilidad—un semestre—que anteriormente era desconocido para la Ley de Contribuciones Sobre Ingresos. En verdad, esto sería una desviación drástica del período anual que siempre ha sido contemplado por la ley. Y el resultado final en casi todos, si no todos, los casos, particularmente en lo referente a contribución adicional, sería reducir la contribución para 1942, no obstante las disposiciones de la Ley núm. 20 expresamente aumentando tales tipos para dicho año contributivo.[5]

Creemos que la Legislatura no tuvo la intención de realizar tan *brutum fulmen.* Tampoco este resultado es exigido inexorablemente, como alega Roig, por la disposición de la sección 11 de que la Ley núm. 20 entrará en vigor en julio 1 de 1942. La sección 11 debe leerse conjuntamente y a la luz de otras secciones de la Ley de Contribuciones Sobre Ingresos con el fin de determinar su verdadero significado y propósito. (Artículo 18, Código Civil, ed. 1930; *Puerto Rico*

---

[5] Es obvio por qué el método empleado por Roig al calcular su contribución para 1942 resultaría en una rebaja más bien que en un aumento en la contribución: aún a los tipos mayores provistos en la Ley núm. 20, el tipo para la contribución adicional sobre la mitad de $50,000 es menos que el tipo para la contribución adicional sobre $50,000 a los tipos viejos. Nadie puede emplear el sistema de hacer dos planillas semestrales para el ingreso anual con el fin de caer en un tipo más bajo de contribución adicional.

*Ilustrado Inc.* v. *Buscaglia,* 64 D.P.R. 914, 940; *Ex Parte The Public National Bank of New York,* 278 U. S. 101, 104; *United States* v. *Katz,* 271 U. S. 354, 357). Así interpretada, nada encontramos en la sección 11 que elimine de la Ley de Contribuciones Sobre Ingresos las secciones 3($a$), 14($b$) y las otras secciones que disponen una contabilidad anual. Más bien, si se lee la sección 11 junto al resto de la ley, encontramos razonable la interpretación del Tesorero, ya que dicha interpretación las armoniza, dándole efecto tanto a la sección 11 como a las otras secciones en cuestión.

Como ya se ha indicado, bajo el método del Tesorero el ingreso para 1942 se toma en su totalidad; se liquida la contribución, tanto bajo los tipos viejos como bajo los nuevos; cada una de estas cifras se divide por dos; y la suma de estas dos cantidades representa la contribución para el año —la mitad al tipo viejo, y la otra mitad al nuevo. Por otro lado, el método del contribuyente para hacer el cálculo, basado en el empleo de una fracción de un año con el fin de determinar el tipo en cuanto a la contribución adicional que le es aplicable al contribuyente, burlaría las secciones 3($a$) y 14($b$), que siempre han estado en nuestra Ley.

Para apoyar su posición, el contribuyente cita casos al efecto de que cuando dos secciones de una ley están en conflicto, deberá prevalecer la última—aquí, la sección 11 frente a la sección 1 de la Ley núm. 20.([6]) Pero toda vez que no encontramos que estas secciones estén en irreconciliable conflicto, estos casos son inaplicables.

La sección 10($a$) de la ley expresamente dispone el mismo resultado a que hemos llegado cuando el contribuyente, que informa su ingreso a base de año económico, se confronta con dos leyes contributivas que disponen tipos di-

---

([6])La sección 1 es la sección 3($a$) de la Ley de Contribuciones Sobre Ingresos; fué enmendada por la Ley núm. 20 con fines de gramática y de fecha.

ferentes para períodos del mismo año económico.([7]) Nuestra ley no contiene tal disposición para un contribuyente que paga por año natural. Por tanto, Roig alega que el no haber la Legislatura dispuesto expresamente por ley que los contribuyentes de año natural serían tratados de igual manera, impide que se llegue a ese resultado aquí.

Si la Legislatura hubiera incluído a los contribuyentes de año natural en la sección 10(a), este pleito no hubiera surgido. Pero nuestra ley se copió sustancialmente de la Ley Federal. Y nunca ha sido necesario incluir en las leyes federales tal disposición para los contribuyentes de año natural en vista del hecho de que el Congreso de ordinario aprueba las leyes de Contribuciones Sobre Ingresos con carácter retroactivo a enero 1. (2 Mertens, supra, sección 13.23, pág..391, y su Suplemento para 1945, pág. 144 *et seq.*; 4 Paul & Mertens, *Law of Federal Income Taxation*, sec. 40.30, pág. 621). Por tanto, bajo.las Leyes Federales nunca podría haber un pleito como el presente.([8])

Cuando nuestra legislatura cambió la norma Federal aprobando una ley retroactiva a una fecha distinta a enero 1, pudo haberse evitado este pleito ampliando la sección 10

([7])La sección 10(a) dice como sigue:

"Si el contribuyente rinde declaración por un período que empieza en un año natural (el cual se denominará en adelante en esta subdivisión 'primer año natural') y que termina en el próximo año natural (el cual se denominará en adelante en esta subdivisión 'segundo año natural') y la ley aplicable al segundo año natural es distinta de la aplicable al primer año natural, entonces su contribución a virtud de este título por el período que termina durante los segundos años naturales será la suma de: (1) la misma proporción que una contribución por el período completo, determinada de acuerdo con la ley aplicable al primer año natural y el tipo que corresponda a tal año, que la porción de dicho período que caiga dentro del primer año natural es el período completo; y (2) la misma proporción que una contribución por el período completo, determinada de acuerdo con. la ley aplicable al segundo año natural y a los tipos contributivos de dicho año, que la porción de dicho período que caiga dentro del segundo año natural es del período completo."

([8])*Iron Mountain Oil Co.* v. *Alexander*, 37 F.2d 231, (C.C.A. 10, 1930) sencillamente resuelve que el equivalente Federal de la sección 10(a) es válido; en él no hay lenguaje o insinuación alguna al efecto de que en ausencia de la sección 10(a) no pueda conseguirse el mismo resultado.

(*a*) para que incluyera los contribuyentes de años naturales. Sin embargo, por los motivos ya indicados, somos de opinión que el método del Tesorero para calcular la contribución aquí envuelta fué el correcto. Si bien pudo ser de alguna ayuda el que la Legislatura, en un exceso de precaución, lo hubiera expresamente así dispuesto, no estamos convencidos de que al no hacerlo la Legislatura quiso abandonar el principio de una planilla anual y permitir dos planillas fraccionadas para 1942.([9])

*La decisión del Tribunal de Contribuciones será confirmada.*

([9]) Indicamos de paso que aun si el método usado por el contribuyente fuera permitido, estaría obligado a informar el cálculo exacto de su ingreso tal cual fué éste devengado en cada uno de los dos semestres; en verdad no puede el contribuyente, como lo ha hecho aquí, dividir sencillamente el ingreso de todo el año en dos mitades.