COMUNIDAD SUCESIÓN MATEO FAJARDO CARDONA, compuesta DE CARLOS FAJARDO DÁVILA ET AL., peticionarios, *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, demandado; TESORERO DE PUERTO RICO, interventor.

Núm. 272.—*Sometido:* Junio 2, 1952. *Resuelto:* Junio 9, 1952.

544

*Andrés Guillemard, Carlos García Méndez, Oscar Souffront* y *A. Ramírez Silva,* abogados de los peticionarios; *Hon. Procurador General Víctor Gutiérrez Franqui* y *José A. García Malpica, Procurador General Auxiliar,* abogados del interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

En *Buscaglia, Tes.* v. *Tribl. Contribuciones y Comunidad Fajardo,* 70 D.P.R. 99, confirmamos la decisión del Tribunal de Contribuciones al efecto de que la Comunidad no estaba obligada a pagar contribuciones sobre ingresos en calidad

de sociedad para los años 1938 y 1939 a tenor con la sección 2 (a) (3) de la Ley de Contribuciones sobre Ingresos; pero, revocando al Tribunal de Contribuciones, resolvimos que la Comunidad tenía que pagar contribuciones para el 1940 como una sociedad que operaba en calidad de empresa común, de conformidad con la enmienda a la sección 2 (a) (3) que se halla en la Ley núm. 31, Leyes de Puerto Rico, 1941 ((1) pág. 479), que se hizo retroactiva al 1ro. de enero de 1940 a virtud de la sección 29 de la referida Ley núm. 31.(1) Devolvimos el caso con el fin de que el Tribunal de Contribuciones determinara si el Tesorero había actuado correctamente al imponerle a la Comunidad una penalidad de 25 por ciento por haber dejado de radicar una planilla para 1940 como sociedad, y para ulteriores procedimientos.

Al devolvérsele el caso, el Tribunal de Contribuciones resolvió que el Tesorero había actuado correctamente al imponerle a la Comunidad una penalidad de 25 por ciento y al rechazar deducciones de intereses pagados por ésta a la Central Eureka, Inc. Expedimos el auto de *certiorari* a solicitud de la contribuyente para revisar la decisión del Tribunal de Contribuciones en cuanto a estas dos cuestiones y en cuanto al método empleado por dicho Tribunal al computar la contribución.

Examinemos primeramente la contención de la peticionaria referente a la penalidad de 25 por ciento. Como ya hemos visto, se impusieron contribuciones a la peticionaria por primera vez en calidad de sociedad que operaba como empresa común, mediante la Ley núm. 31 de 1941. Dicha Ley se hizo retroactiva al 1ro. de enero de 1940; por consiguiente era aplicable al año fiscal de la contribuyente que finalizó el 30 de junio de 1940. Pero toda vez que la Ley núm. 31 no fué aprobada hasta el 12 de abril de 1941, la peticionaria desde luego no había radicado planilla alguna

---

(1) La sección 2 (a) (3), según fué enmendada por la Ley núm. 31 de 1941, define el término sociedad como que incluye dos o más personas cuando se dediquen a una empresa común.

en o antes del 15 de septiembre de 1940 para el año fiscal 1939–40.(²) Sin embargo, la Legislatura previó esta situación. La resolvió proveyendo en la sección 26 de la Ley núm. 31 que "Toda persona que venga obligada a rendir planillas, de acuerdo con las disposiciones de esta Ley según la misma ha sido enmendada, y toda persona que por cualquier razón hubiere dejado de rendir sus planillas el día 15 de marzo de 1941, a pesar de estar obligada a ello por la ley vigente en dicha fecha, podrá rendir su planilla dentro de los treinta días siguientes a la fecha de vigencia de esta Ley, pagando los impuestos correspondientes por el año contributivo 1940, y si así lo hiciere no incurrirá en las penalidades establecidas en el primer párrafo del inciso (2) de la sección 77 de esta Ley."

Esto quiere decir que la contribuyente sabía desde el 12 de abril de 1941 que estaría obligada a radicar dentro de cuatro meses una planilla para el año fiscal 1939–40.(³) La contribuyente nunca radicó la planilla. Por el contrario, en 1944 el Tesorero preparó una planilla de oficio de acuerdo con la sección 70(a) de la Ley de Contribuciones sobre Ingresos.(⁴)

 Al tratar de evitarse el pago de la penalidad por no radicar su planilla para el 1940 a tenor con la sección 26, la contribuyente descansa en la sección 70(b) de la Ley de Contribuciones sobre Ingresos, que dice así:

---

(²) A tenor con las secciones 27 y 39 de la Ley de Contribuciones sobre Ingresos la peticionaria venía obligada a radicar su planilla "en o antes del día 15 del tercer mes siguiente a la terminación del año económico . . . ".

(³) La Ley núm. 31 de 1941 dispone en su sección 29 que la misma empezará a regir a los noventa días después de su aprobación.

(⁴) La sección 70(a) provee como sigue: "Si alguna persona, corporación, sociedad, compañía o asociación dejare de hacer y presentar una declaración o lista en la fecha prescrita por la ley o por el reglamento prescrito de acuerdo con ella, o si voluntariamente o de otro modo hiciere una declaración o lista falsa o fraudulenta, el Tesorero hará la declaración o lista por conocimiento propio y por la información que pudiere obtener mediante testimonio o de otro modo. Cualquier declaración o lista así hecha y suscrita por el Tesorero o cualquiera de sus agentes debidamente autorizado, será, *prima facie,* válida y suficiente para todo fin legal."

"(*b*) El Tesorero determinará e impondrá todas las contribuciones por las cuales así se hicieren las declaraciones o listas de acuerdo con esta sección. En caso de no hacerse y presentarse una declaración o lista dentro de la fecha prescrita por la ley, o por el Tesorero de acuerdo con la ley, éste agregará a la contribución el 25 por ciento de su importe, excepto que cuando una declaración se presentare después de dicha fecha y se demostrare que la falta se debió a una causa razonable y no a negligencia voluntaria, no se agregará nada a la contribución. En caso de que voluntariamente se hiciere una declaración o lista falsa o fraudulenta, el Tesorero agregará a la contribución el 50 por ciento de su importe."

Sostiene la peticionaria que el no haber ella radicado una planilla para 1940 como empresa común se debió a una "causa razonable y no a negligencia voluntaria . . . ". En apoyo de esta contención, alega lo siguiente: (1) era incierto si debía pagar contribuciones como empresa común hasta que revocamos al Tribunal de Contribuciones y resolvimos la cuestión a favor del Tesorero; (2) siguiendo consejos de un contador, radicó una planilla como sociedad([5]) en septiembre de 1941 para el año fiscal 1940–41 con miras a litigar la cuestión mediante solicitud de reintegro; (3) el abogado del Tesorero manifestó en el juicio ante el Tribunal de Contribuciones, aparentemente en vista de anteriores decisiones, que la peticionaria no venía obligada a pagar contribución sobre ingresos como sociedad para el año 1940 toda vez que la Ley núm. 31 de 1941 no tenía ese efecto retroactivo en el presente caso; (4) las planillas individuales de los varios comuneros reflejaban los ingresos recibidos por ellos de la peticionaria.

Vendríamos obligados a considerar estos argumentos y examinar su validez si nuestro·estatuto fuese similar a la actual Ley Federal y autorizara al Tesorero a eliminar la penalidad cuando haya una causa razonable para no haber radicado la planilla. Véanse 10 Mertens, *Law of Federal*

---

([5]) El hecho de que sustituyera en la forma impresa la palabra "sociedad" por la de "Comunidad" no altera la naturaleza de la planilla.

*Income Taxation*, pág. 42 *et seq;* Reisner, *Relief from Delin-quency Penalties: The Internal Revenue Code*, 98 U. of Pa. L. Rev. 183. Pero el Tribunal de Contribuciones correctamente dijo en su opinión que la "causa razonable" provista en la sección 70(*b*) entra en juego solamente si la planilla de hecho se radica, aunque tardíamente. Cuando, como ocurre aquí, el contribuyente ninguna planilla radica, la penalidad de 25 por ciento es mandatoria. La Corte Suprema de los Estados Unidos interpretó en esta forma una disposición similar de la anterior Ley Federal de 1934. "Esta disposición excusa la radicación tardía, por causa razonable, pero no el dejar totalmente de radicar la planilla." *Commissioner* v. *Lane-Wells Co.*, 321 U. S. 219, 224, nota 11; 10 Mertens, supra, págs. 37–38; Reisner, supra, pág. 184.

El Congreso aparentemente creyó que ésta era una disposición muy fuerte. En 1936 enmendó el estatuto federal en el sentido de que se pudiera eliminar la penalidad aun cuando no se radicase la planilla, siempre y cuando que el dejar de radicarla se debiera a una causa razonable. Pero nuestro estatuto no ha sido enmendado en igual sentido. Por tanto estamos constreñidos a resolver que la penalidad de 25 por ciento recae en forma automática al demostrarse meramente, como ocurre aquí, que el contribuyente en ningún momento radicó su planilla.

La segunda cuestión es si el Tribunal de Contribuciones cometió error al rechazar las deducciones por los pagos de intereses hechos por la Comunidad a la Central Eureka, Inc., durante 1940 y 1941. Con anterioridad a la aprobación de la Ley núm. 31 de 1941, estos pagos de intereses indudablemente habrían sido deducibles bajo la sección 32(*a*)(2) de la Ley de Contribuciones sobre Ingresos.(⁶) Pero la Ley núm. 31 enmendó la sección 32(*a*)(2) adicionándole lo siguiente:

---

(⁶) Antes de la enmienda de 1941, que era retroactiva al 1ro. de enero de 1940, la sección 32(*a*)(2) permitía sin limitación alguna las deducciones de "Todos los intereses pagados o acumulados dentro del año contributivo sobre sus deudas . . . ".

*"Disponiéndose,* que no son deducibles los intereses pagaderos *entre un individuo y una corporación o sociedad* cuando el individuo posee o controla directa o indirectamente, o a través de su familia, más del cincuenta (50) por ciento ˙del valor de las acciones emitidas (*outstanding stock*) por la corporación o más del cincuenta (50) por ciento del capital social, o *entre dos corporaciones* cuando una de ellas posea o controle más de un cincuenta (50) por ciento de las acciones emitidas (*outstanding stock*) por la otra corporación. Para los fines de esta sección son aplicables las mismas definiciones de familia contenidas en esta Ley." (Bastardillas nuestras.)

No existe controversia alguna en cuanto a que durante 1940 y 1941 los comuneros de los bienes de la Comunidad poseían más del 50 por ciento de las acciones de la Central Eureka, Inc. El Tribunal de Contribuciones por consiguiente resolvió que a tenor con el *Disponiéndose* antes copiado, la Comunidad no tenía derecho a deducir los pagos de intereses hechos por ella a la Central Eureka, Inc., en 1940 y 1941 en vista de la referida posesión de las acciones.

El *Disponiéndose* no prohibe expresamente las deducciones de pagos de intereses hechos por una sociedad a una corporación. A pesar de esta omisión, el Tribunal de Contribuciones rechazó tales deducciones. Su razonamiento puede sintetizarse así: En términos generales, la Ley de Contribuciones sobre Ingresos trata a la sociedad en la misma forma que a la corporación. Pero· cf. *Buscaglia, Tes.* v. *Tribl. Contribuciones y Ballester,* 69 D.P.R. 750, 70 D.P.R. 386, confirmado en *Ballester* v. *Descartes,* 181 F. 2d 823 (C.A. 1, 1950). Y de las enmiendas a la sección 32(*a*)(2) y a la 16(*a*)(2) en 1941([7]) surge una política legislativa general contra las deducciones de pagos de intereses cuando.se hacen

---

([7]) La Ley núm. 31 de 1941 estableció una limitación similar sobre la deducción de intereses en las planillas individuales. Adicionó a la sección 16(*a*)(2) lo siguiente: *"Disponiéndose,* que no son deducibles intereses algunos, si son pagaderos entre miembros de una familia o *entre un individuo o una corporación* con respecto a la cual el individuo sea dueño directa o indirectamente de más del cincuenta (50%) por ciento del valor de las acciones emitidas (*outstanding stock*) o (*c*) *entre corporaciones* con·

entre miembros de una familia o en otras situaciones que envuelven interrelación. La omisión en la enmienda de 1941 de la sección 32 (*a*) (2) de los pagos de intereses hechos por una sociedad a una corporación, fué en consecuencia una omisión involuntaria y la Legislatura no excluyó consciente-mente tales pagos de la política general que estableció mediante las secciones 32 (*a*) (2) y 16 (*a*) (2).

Aceptamos el anterior razonamiento del Tribunal de Contribuciones. Pero no podemos convenir en que el mismo nos lleva a la conclusión de que una sociedad no tenía derecho a deducir intereses pagados en 1940 y 1941 a una corpora-ción relacionada con ella. Admitimos la fuerza del argu-mento del Tribunal de Contribuciones. Pero las cortes no tienen autoridad para injertar en el lenguaje *inequívoco* de un estatuto contributivo como la sección 32 (*a*) (2) una dis-posición que la Legislatura, ya fuere deliberadamente o no, eligió omitir. En efecto eso equivaldría a que fueran los tribunales los que hiciesen las leyes contributivas. Y esa función debe siempre permanecer en la Legislatura.

Al rechazar una contención similar en un caso contribu-tivo, la Corte Suprema de los Estados Unidos, en una opi-nión emitida por el Juez Asociado Sr. Brandeis, dijo en *Ise-lin* v. *United States*, 270 U. S. 245, 250–51: "Su lenguaje es claro e inequívoco. Lo que el gobierno pretende no es una interpretación de un estatuto, sino en efecto, una amplia-ción del mismo por la corte, de suerte que lo que se omitió, *presumiblemente por inadvertencia*, pueda incluirse en su alcance. El suplir las omisiones trasciende los límites de la función judicial." (Bastardillas nuestras.) Al mismo efecto, 1 Mertens, supra, págs. 57–60, y casos citados; *Hart-*

respecto a las cuales un mismo individuo o corporaciones y el dueño o dueña directa o indirectamente de más del cincuenta (50) por ciento de las acciones emitidas (*outstanding stock*), de cada una de dichas corpo-raciones (sic), o (*d*) *son dos corporaciones,* una de las cuales es dueña directa o indirectamente de más del cincuenta (50%) por ciento de las acciones emitidas (*outstanding stock*) de la otra corporación." (Bastard-illas nuestras.)

*fried Inc.* v. *Commissioner of Internal Rev.*, 162 F. 2d 628 (C. A. 3, 1947) ; *Girard Inv. Co.* v. *Commissioner of Internal Revenue*, 122 F. 2d 843 (C. A. 3, 1941).

El Tribunal de Contribuciones descansó en *Rullán* v. *Buscaglia*, 168 F. 2d 401 (C. A. 1, 1948), confirmando *Buscaglia, Tes.* v. *Tribl. de Contribuciones*, 67 D.P.R. 585, y casos allí citados. Y véase *Sucn. Giusti* v. *Tribl. Contribuciones*, 70 D.P.R. 117, 136, nota 9. Pero en el caso de *Rullán* este Tribunal y la Corte de Apelaciones meramente corrigieron un error gramatical de la Legislatura cuando bajo las circunstancias concurrentes interpretamos que la palabra "pagaderos" de la sección 16(*a*) (2) incluía la palabra "pagados". Aquí la sección 32(*a*) (2) guarda absoluto silencio en cuanto al problema de pagos de intereses hechos por una sociedad a una corporación. No podemos por fíat judicial crear una prohibición contra una deducción que en ningún sitio aparece en el estatuto. *Cf. Pueblo* v. *Mantilla*, 71 D.P.R. 36.

El *Disponiéndose* de la sección 32(*a*) (2) fué enmendado por la Ley núm. 107, Leyes de Puerto Rico, 1943.[8] Esta última enmienda por primera vez específicamente prohibía la deducción de intereses pagados por una sociedad a una corporación relacionada. El Tribunal de Contribuciones afirma que esta enmienda era meramente aclaratoria y que sola-

---

[8] La enmienda de 1943 dispone lo siguiente:
"*Disponiéndose*, que no son deducibles los intereses pagaderos entre un individuo y una corporación o sociedad, ni los intereses pagaderos entre una corporación o sociedad y un individuo, cuando el individuo posee o controla directa o indirectamente, o a través de su familia, más del cincuenta (50) por ciento del valor de las acciones emitidas (*outstanding stock*) por la corporación o más del cincuenta (50) por ciento del capital social, o entre dos corporaciones cuando una de ellas posea o controle más de un cincuenta (50) por ciento de las acciones emitidas (*outstanding stock*) por la otra corporación, o entre dos sociedades cuando una de ellas posea o controle más del cincuenta (50) por ciento del capital social de la otra, o entre una sociedad y una corporación cuando dicha corporación posea o controle más el cincuenta (50) por ciento del capital social de aquélla, o entre una corporación y una sociedad cuando dicha sociedad posea o controle más del cincuenta (50) por ciento de las acciones emitidas (*outstanding stock*) por dicha corporación. Para los fines de esta sección son aplicables las mismas definiciones de familia, corporación y sociedad contenidas en esta Ley."

mente expuso una ley que ya existía. *Cf. Central Coloso* v. *Tribl. Contribuciones,* 70 D.P.R. 65.

No podemos convenir en que la Ley núm. 107 de 1943 apoya la posición del Tribunal de Contribuciones y del Tesorero. De su faz no dice que es meramente una enmienda aclaratoria. Tampoco dice que tendrá efecto retroactivo alguno. De todo lo que aparece, o la Legislatura establecía una nueva política prospectivamente mediante la Ley núm. 107 o reconocía que había una laguna en la Ley núm. 31 que estaba eliminando para fines futuros. Pero bajo cualquiera de estas dos teorías la Ley núm. 107 no puede ser interpretada en el sentido de que fué la intención legislativa el que las deducciones por pagos de intereses hechos en años anteriores estaban prohibidas.

El caso de *Descartes, Tes.* v. *Tribl. Contrib. y Sucn. Cautiño,* 71 D.P.R. 248, es distinguible. En él resolvimos que el defecto en la sección 16 (a) (2) al no incluir entre las deducciones prohibidas los intereses pagados por un individuo a una sociedad estaba subsanado por la disposición que cubría tales pagos en la sección 32 (a) (2), a pesar del hecho de que el título de esta última solamente se refiere a deducciones hechas por corporaciones y sociedades. Nuestro caso es muy diferente. Como ya hemos visto, no existe disposición alguna en la sección 32 (a) (2) o en ninguna otra sección de la Ley de Contribuciones sobre Ingresos con referencia a intereses pagados por una sociedad a una corporación.

Nos damos cuenta del argumento de que las deducciones son cuestión de gracia legislativa y deben interpretarse restrictivamente. *Descartes, Tes.* v. *Tribl. Contrib. y Sucn. Cautiño,* supra, pág. 254. Pero la primera parte de la sección 32 (a) (2) claramente permite las deducciones de pagos de intereses sin restricción alguna. Y con idéntica claridad el *Disponiéndose* no prohíbe tales deducciones de intereses pagados por una sociedad a una corporación. Por los moti-

vos ya expuestos, el Tribunal de Contribuciones cometió error al rechazar las deducciones de la Comunidad por pagos de intereses hechos por ella en 1940 y 1941 a la Central Eureka, Inc.

■ La tercera cuestión aquí envuelta es si el Tribunal de Contribuciones cometió error al sostener, sobre la objeción de la contribuyente, el cómputo radicado por el Tesorero.(9) Como hemos visto, la sección 29 disponía que la Ley núm. 31 de 1941 tendría efecto retroactivo al 1ro. de enero de 1940. Por otro lado, la sección 3(a) de la Ley de Contribuciones sobre Ingresos, según fué enmendada por la Ley núm. 31, disponía que "El primer año contributivo a los efectos de esta Ley será el año natural de 1940, *o cualquier año económico que haya terminado dentro del año natural de 1940.*" (Bastardillas nuestras).(10) El Tesorero alega que estas dos secciones deben leerse conjuntamente y armonizarse. *Descartes, Tes.* v. *Tribl. Contrib. y Sucn. Cautiño,* supra; *Roig* v. *Tribl. de Contribuciones,* 65 D.P.R. 445. Arguye que esto se obtiene (1) calculando la contribución para el año fiscal 1939–40 como si hubiera regido la ley anterior durante todo el año fiscal; (2) haciendo el mismo cálculo como si la Ley núm. 31 hubiera estado en vigor durante todo el año fiscal; (3) dividiendo cada una de estas cifras entre dos; y (4) sumando los dos resultados. Afirma que este método de hacer el cálculo está de acuerdo con la sección 10(a) de la Ley, que establece este método para contribuyentes de año económico cuando "la ley aplicable al segundo año natural es distinta de la aplicable al primer año natural . . . ".(11)

---

(9) El Juez Romero disintió de la resolución del Tribunal de Contribuciones aprobando el cómputo radicado por el Tesorero.

(10) La sección 26 de la Ley núm. 31 de 1941 refuerza la 3(a). Dispone que una persona podrá "rendir su planilla dentro de los treinta días siguientes a la fecha de vigencia de esta Ley, pagando los impuestos correspondientes por *el año contributivo 1940 . . .*". (Bastardillas nuestras.)

(11) La sección 10(a) prescribe así: "Si el contribuyente rinde declaración por un período que empieza en un año natural (el cual se deno-

Convenimos con el Tesorero y el Tribunal de Contribuciones en que la sección 29 de 1941 y las secciones 3 (*a*) y 10 (*a*) de la Ley de Contribuciones sobre Ingresos deben leerse conjuntamente, armonizarse y aplicarse a los hechos de este caso. De igual manera, convenimos en que esto se obtiene llevando a efecto los cuatro pasos antes descritos. Pero al así hacerlo, llegamos a una conclusión diferente.

La dificultad estriba en el primer paso. Al llevarlo a cabo, el Tesorero calculó la contribución como si la contribuyente fuera una sociedad corriente que de hecho estaba sujeta a contribución durante el año natural de 1939 al tipo prevaleciente entonces. Pero la ley del caso es que la peticionaria no estuvo sujeta a contribución como sociedad que operaba como empresa común hasta el 1ro. de enero de 1940. 70 D.P.R. 99. Y toda vez que la sección 10 (*a*) dispone que al efectuar el primer paso la contribución se calcula "de acuerdo con la ley aplicable al primer año natural", la cifra obtenida bajo la ley aplicable durante el año natural 1939 necesariamente debe ser cero. El resultado es que bajo las circunstancias de este caso la peticionaria viene obligada a pagar por el año fiscal 1939–40 una contribución calculada considerando la Ley núm. 31 como si hubiera estado en vigor durante todo el año económico y dividiendo entre dos la cifra obtenida. ([12])

minará en adelante en esta subdivisión 'primer año natural') y que termina en el próximo año natural (el cual se denominará en adelante en esta subdivisión 'segundo año natural') y la ley aplicable al segundo año natural es distinta de la aplicable al primer año natural, entonces su contribución a virtud de este título por el período que termine durante los segundos años naturales será la suma de: (1) la misma proporción que una contribución por el período completo, determinada de acuerdo con la ley aplicable al primer año natural y el tipo que corresponda a tal año, que la porción de dicho período que caiga dentro del primer año natural es el período completo; y (2) la misma proporción que una contribución por el período completo, determinada de acuerdo con la ley aplicable al segundo año natural y a los tipos contributivos de dicho año, que la porción de dicho período que caiga dentro del segundo año natural es del período completo."

([12]) Ninguna de las partes alega que bajo las circunstancias de este caso—que envuelve un estatuto aprobado después de finalizado el año eco-

El defecto en la teoría sustentada por el Tesorero y adoptada por el Tribunal de Contribuciones se ilustra gráficamente por el hecho de que al aplicarla el Tesorero necesariamente hizo el primer cálculo empleando el tipo menor aplicable a una sociedad corriente con anterioridad a la fecha de vigencia de la Ley núm. 31 y concediendo créditos y deducciones que fueron eliminados por la Ley núm. 31. Si la peticionaria hubiera estado sujeta a contribución como una sociedad durante el 1939, este método de cálculo hubiera sido correcto. Pero no hay base en las secciones 3 (a) o 10 (a) para recurrir a una ley y a unos tipos que nunca fueron aplicables a la peticionaria.

El caso de *Roig* v. *Tribl. de Contribuciones*, supra, está de acuerdo con el criterio aquí enunciado. La Ley núm. 20 de 3 de diciembre de 1942, aumentando la contribución sobre ingresos, decía en su sección 11 que "tendrá efecto a contar del día 1 de julio de 1942 . . . ". En el de *Roig* resolvimos, con excepciones que no vienen al caso aquí, que nuestra Ley está predicada en un período de ingreso anual; que un contribuyente de año natural no estaba por tanto autorizado por la sección 11 a dividir su ingreso anual arbitrariamente en dos mitades exactas e informar una mitad como devengada durante el primer semestre del año y la otra mitad como devengada durante el segundo; y que el método provisto en la sección 10 (a) para contribuyentes de año económico descrito arriba en detalle era aplicable a un contribuyente de año natural aun cuando la sección 10 (a) no cubría

nómico en cuestión—la planilla debe ser solamente por los seis meses correspondientes al semestre de enero 1 a junio 30, 1940, por los cuales la peticionaria venía obligada a pagar contribución. *Cf.* la sección 3 (a) de la Ley, que dice en parte que "El término 'año contributivo' incluirá, en el caso de una declaración hecha por una fracción de año, de acuerdo con las disposiciones de este Título o con los reglamentos prescritos por el Tesorero, el período por el cual dicha declaración hubiere sido hecha"; sección 26 de la Ley; artículos 67 y 235 del Reglamento de Contribuciones sobre Ingresos núm. 1; *Economy Savings & Loan Co.* v. *Commissioner of Int. Rev.*, 158 F.2d 472 (C.A. 6, 1946); 1 Mertens, supra, pág. 370 *et seq.; Roig* v. *Tribl. de Contribuciones*, 65 D.P.R. 445, 451, nota 9.

expresamente contribuyentes de año natural. Como la peticionaria prepara sus planillas a base de un año económico, todas las partes convienen en que la sección 10(a) es de aplicación aquí. La única cuestión, como hemos visto, es cómo efectuar el primero de los cuatro pasos requeridos por la sección 10(a). Por los motivos expuestos, resolvemos que, interpretando conjuntamente la sección 29 de la Ley núm. 31 y las secciones 3(a) y 10(a) de la Ley de Contribuciones sobre Ingresos, la contribución adeudada por el año económico 1939-40 debió haber sido calculada aplicando la Ley núm. 31 a todo el año económico y entonces dividiendo entre dos la cifra obtenida.(13)

 El Tesorero y el Tribunal de Contribuciones indican que la deficiencia originalmente notificada a la peticionaria demostraba de su faz que fué calculada desde el principio en la forma usada en el cómputo. Por consiguiente, el Tesorero sostiene que la objeción al cómputo era tardía ya que envolvía una cuestión de ley sustantiva ajena a aquéllas levantadas por las alegaciones y no un problema matemático de cálculo. El Tribunal de Contribuciones, si bien convino con este argumento del Tesorero, entró también en los méritos de la cuestión levantada en la objeción al cómputo.

En *Buscaglia, Tes.* v. *Tribl. de Contribuciones, Arcelay, Interventor,* 67 D.P.R. 13, dijimos a las págs. 15-16: "Queremos poner énfasis una vez más, sin embargo, en el hecho de que la disposición de la Regla 29 [del Tribunal de Contribuciones] al efecto de que una decisión no es final hasta que se radique el cómputo, no debe usarse para litigar cuestiones ajenas a la liquidación del cómputo. La vista sobre el cómputo, de celebrarse alguna, debe limitarse a una controversia matemática. A las partes hay que hacerles comprender que no pueden litigar sus pleitos fragmentariamente. Deben presentar todo su caso en el juicio en los méritos. La vista en

_____

(13) Naturalmente, la penalidad y los intereses deben ser cobrados tan sólo sobre la cantidad que según esta opinión la contribuyente ha de pagar.

cuanto al cómputo debe limitarse solamente a esa cuestión, y no puede utilizarse como un recurso para litigar las cuestiones que fueron o debieron haberse presentado al Tribunal de Contribuciones en la vista sobre los méritos. *González Padín Co., Inc.* v. *Tribunal de Contribuciones*, 66 D.P.R. 964. Si cualquiera de las partes pretende en ese momento levantar un punto que debió haberse litigado dentro del procedimiento propiamente dicho, el Tribunal de Contribuciones debe negarse a oírlo, a no ser a tenor con una moción para que se deje sin efecto la decisión y se celebre una nueva vista con enmiendas apropiadas de las alegaciones. Y el Tribunal de Contribuciones debe declarar con lugar esa moción en muy raras ocasiones y solamente por los motivos más sustanciales."

Sin embargo, cuando el Tribunal de Contribuciones entra en los méritos de nuevas cuestiones sustantivas al sometérsele un cómputo, bajo las circunstancias concurrentes en algunos casos nos hemos negado a revocar por ese fundamento, siempre y cuando que las partes tuvieran su día en corte. Hicimos esto a instancias del Tesorero en *González Padín Co.* v. *Tribl. de Contribuciones*, supra, donde dijimos a las págs. 988–89 que "Enfáticamente convenimos con Padín y el Tribunal de Contribuciones que el Tesorero debería litigar tales cuestiones tratando de enmendar las alegaciones más bien que sometiendo un cómputo, después que se ha resuelto el caso, calculado sobre una teoría diferente a aquélla sobre la cual se juzgó el mismo. Y el Tribunal de Contribuciones deberá en el futuro, como cuestión de pureza en los procedimientos, exigir alegaciones enmendadas más bien que la remisión de un cómputo que envuelve cuestiones substantivas ajenas a aquéllas suscitadas por las alegaciones. Pero si al contribuyente se le da la debida oportunidad de confrontarse con la nueva cuestión suscitada, como pasó en este caso, no vemos qué error perjudicial sufre el contribuyente por el procedimiento aquí seguido. Véanse *Fiddler*

v. *Tribunal de Contribuciones*, 65 D.P.R. 202; *Buscaglia* v. *Tribunal de Contribuciones*, 65 D.P.R. 977."

En el presente caso el Tribunal de Contribuciones nunca llegó a la cuestión aquí envuelta en el primer juicio porque resolvió que la contribuyente no tenía que pagar contribuciones de clase alguna para 1939–40. Y en nuestra opinión en 70 D.P.R. 99 revocando al Tribunal de Contribuciones y devolviendo el caso resolvimos que la peticionaria tenía que pagar contribuciones para 1940 sin examinar el problema que ahora está ante nos. Bajo estas circunstancias, no creemos que el Tribunal de Contribuciones cometiera error al pasar sobre los méritos de la objeción hecha al cómputo. Permitimos que esto se hiciera a instancias del Tesorero en el caso de *González Padín*. No vemos motivo alguno por qué a la contribuyente no deba concedérsele aquí el mismo privilegio. Sin embargo, una vez más indicamos que normalmente el Tribunal de Contribuciones debe tomar tal acción sólo dejando sin efecto su decisión, requiriendo alegaciones enmendadas y celebrando una nueva vista.

*La sentencia del Tribunal de Contribuciones será confirmada en tanto en cuanto dispone que la penalidad de 25 por ciento fué válidamente impuesta. Se modificará proveyendo (1) que la peticionaria tiene derecho a deducir pagos de intereses hechos a la Central Eureka, Inc., durante el 1940 y 1941, y (2) que la peticionaria viene obligada a pagar solamente la mitad de la contribución, intereses y penalidad para el año económico 1939–40. El caso se devolverá al Tribunal de Contribuciones para el cálculo que proceda.*