María de Lourdes González Giusti, acompañada de su esposo, Guillermo E. Aragón, querellantes y apelados, *v.* Sol Luis Descartes, Secretario de Hacienda, querellado y apelante.

Número 10812.

*Sometido:* 5 de mayo de 1953. *Resuelto:* 26 de febrero de 1954.

136

*Hon. Secretario de Justicia José Trías Monge (J. B. Fernández Badillo, Secretario Interino de Justicia,* en el alegato) y *J. C. Santiago Matos, Procurador Auxiliar,* abogados del apelante; *Córdova & González* y *Robert E. Schneider, Jr.,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

El Tesorero de Puerto Rico, hoy Secretario de Hacienda, notificó a la querellante–apelada una deficiencia en su contribución de ingresos para el año 1947, montante a $1,329.04, incluyendo intereses hasta mayo 30 de 1951, fundándose en que la querellante no era residente en Puerto Rico en el año 1947, por lo que le era de aplicación el tipo de 29 por ciento

fijado en la Ley de Contribución sobre Ingresos a los no residentes, y no los tipos aplicables a ciudadanos residentes que son los tipos que ella utilizó al rendir su declaración para dicho año. No estando conforme con dicha deficiencia, recurrió la contribuyente ante el anterior Tribunal de Contribuciones, alegando en su querella (1) que ella era una ciudadana americana residente en Puerto Rico en el año 1947, accidentalmente viviendo en el estado de New York, y (2) que de determinarse que ella no era residente en Puerto Rico en 1947, entonces ella tendría el *status* de ciudadana americana residente en el estado de New York, y en tal caso la aplicación a ella del tipo contributivo fijo de 29 por ciento sería inconstitucional.

Negó el Tesorero de Puerto Rico los hechos esenciales de la querella y alegó afirmativamente que para el año 1947 la querellante no era ciudadana americana, ni residía temporalmente en el Estado de New York, sino que por el contrario, para dicho año la querellante estaba casada con un ciudadano costarricense de nombre Guillermo E. Aragón y en unión del cual tenía establecida su residencia permanente en el Estado de New York.

Al resolver el caso en sus méritos, el tribunal a quo, luego de concluir que para el año 1947, la querellante era ciudadana americana y que tanto ella como su esposo Aragón tenían para dicha fecha, y aún tienen, su domicilio en Puerto Rico, dictó sentencia declarando con lugar la querella.

En apelación contra dicha sentencia el Tesorero de Puerto Rico imputa a la corte la comisión de varios errores. Sin embargo todos se dirigen, en última instancia, a demostrar que dicho tribunal cometió error al resolver que la querellante era para el año 1947 una ciudadana americana residente en Puerto Rico.

La querellante María de Lourdes González Giusti, quien era ciudadana americana domiciliada en Puerto Rico,

contrajo matrimonio con un ciudadano de Costa Rica en el verano de 1946.

Por ello no perdió su ciudadanía americana, porque no la renunció formalmente.(1) No hay pues controversia en cuanto a que la querellante apelada es, y era para 1947, ciudadana americana. Sí hay controversia respecto a si ella era para dicho año residente en Puerto Rico o en el estado de New York. Sin embargo, en uno u otro caso a ella no podía aplicársele el tipo fijo de 29 por ciento en cuanto a ingresos recibidos o devengados después del 5 de agosto de 1947. *Postley* v. *Secretario de Hacienda*, 75 D.P.R. 874. Pero como en cuanto a los ingresos recibidos o devengados antes de dicha fecha podía aplicársele el tipo de 29 por ciento si ella no era residente en Puerto Rico,(2) nos vemos obligados a confrontarnos con el problema planteado por el querellado-apelante, y en su consecuencia, resolver si la prueba justifica o no la conclusión de que la apelada era residente en Puerto Rico en el año 1947. Si resolviéramos esta contención en contra de la apelada entonces la contribución para el año 1947 habría que calcularla a base de dos tipos, o sea, el fijo de 29 por ciento y el tipo utilizado por ella al rendir su declaración de ingreso, debiendo seguirse en tal caso el método que establecimos en *Roig* v. *Tribl. de Contribuciones*, 65 D.P.R. 445,(3) con las variaciones correspondientes en cuanto al tiempo que cubre uno y otro tipo.

(1) Ley de Sept. 22, 1922, 42 U. S. Stat. at L., pág. 1022, C. 411, sección 3; 8 U.S.C.A. Sec. 9, enmendada por Ley de Julio 3, 1930; Ley de Marzo 3, 1931, 46 U. S. Stat. at L., pág. 1511, C. 442, sección 4; Ley de Junio 25, 1936, 49 Stat. 1917; Ley de Julio 2, 1940, 54 Stat. 715.

(2) *Buscaglia, Tesorero* v. *Tribl. de Contribuciones*, 68 D.P.R. 345; *Postley* v. *Secretario de Hacienda*, supra.

(3) Copiamos del *syllabus* de este caso:

"Un contribuyente de año natural que se confronta con dos leyes contributivas que disponen tipos diferentes para períodos del mismo año natural debe tomar el ingreso total para el año, liquidar la contribución tanto bajo los tipos viejos como los nuevos y dividir cada una de estas cifras por dos. La suma de estas cantidades representa la contribución para el año—la mitad al tipo viejo y la otra al nuevo. . . . . . ."

 Esto nos lleva a considerar la prueba presentada en el caso para determinar si las conclusiones de la corte sentenciadora son correctas. El querellado no presentó prueba alguna y conforme a la de la querellante María de Lourdes González de Aragón, ésta era ciudadana americana y de Puerto Rico y había residido siempre aquí. En 1941, mientras cursaba estudios en la ciudad de New York, conoció allí al que es hoy su esposo, Dr. Guillermo Enrique Aragón y quien entonces era ciudadano de Costa Rica. Aragón fué a Estados Unidos en 1938 e ingresó en la Universidad de Columbia. Obtuvo su bachillerato en 1943 y luego ingresó en Long Island College of Medicine. En 1943 vino a Puerto Rico a conocer a los padres de la querellante para formalizar su compromiso amoroso con ella, sin que esto último se llevara a cabo debido a que Aragón pensaba ingresar en el ejército norteamericano. En el mismo año Aragón ingresó voluntariamente en el ejército de Estados Unidos donde sirvió hasta marzo de 1945. En junio de ese año ingresó nuevamente en la Escuela de Medicina de Long Island, y en las Navidades del mismo año volvió a Puerto Rico para formalizar su compromiso con la querellante, fijándose entonces el 5 de julio de 1946 para la celebración de las bodas. Aragón y la querellante contrajeron matrimonio en Puerto Rico en la fecha indicada y luego vivieron durante dos meses en un apartamiento de la planta alta de la casa de los padres de la querellante, ubicada ésta en el sitio conocido como "Caparra", de Santurce, Puerto Rico. El padre de la querellante donó a ésta y su esposo un solar en Caparra para que fabricasen su residencia. Regresó entonces Aragón con su esposa a Estados Unidos para continuar sus estudios en New York, graduándose de doctor en medicina en junio de 1948 y terminando su internado en junio de 1949. En el 1947 Aragón vino con su esposa a Puerto Rico a pasar aquí sus vacaciones de Navidad y ocuparon el mismo apartamiento en la casa de los padres de la querellante. Luego de terminar su inter-

nado, el doctor Aragón decidió especializarse en cirugía. Esto requería un curso de 5 años más. Como primer paso tomó un curso post graduado en el Bellevue Medical College y luego comenzó dos años de residencia en el St. Vincent's Hospital de New York, los que terminó en 1951. Para el 1952 cursaba el tercer año en la Universidad de Colorado y terminará el curso en junio de 1954. No hizo ese curso en Puerto Rico porque para aquella época en Puerto Rico no había ninguna institución aprobada por el "American Board of Surgeons" que es la que expide el diploma sobre especialización en cirugía. La prueba revela que Aragón nunca ingresó en alguna sociedad cívica o social en Puerto Rico ni frecuentó en 1947 alguna iglesia como miembro permanente de ella. Revela además dicha prueba que en el 1950 Aragón se convirtió en ciudadano americano. Desde el año 1939 Aragón no ha regresado a su país natal, Costa Rica. Asimismo revela la prueba que los médicos residentes, haciendo una especialidad aprobada en las escuelas de medicina de Estados Unidos perciben un sueldo que fluctúa entre $100 y $250.

A base de esta prueba el tribunal a quo concluyó que los esposos Aragón González establecieron en Puerto Rico su domicilio y residencia permanente, cuando contrajeron matrimonio en 5 de julio de 1946.([4]) Tal conclusión implica que Aragón era un residente en Puerto Rico en 1947 y que por ende, su esposa también lo era, ya que al contraer matrimonio la querellante adquirió el domicilio de su esposo. *Tesorero* v. *Tribl. de Contribuciones y Sole*, 69 D.P.R. 905.

Ahora bien, conforme dispone el artículo 11 de nuestro Código Político, para determinar el lugar de domicilio se observarán las siguientes reglas:

---

([4]) Nuestra revisión no está ya limitada, según alega la apelada, a errores de derecho. Véase la sección 14 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico (Ley número 11 de 24 de julio de 1952, (2) pág. 31).

"1. Es el lugar donde reside habitualmente una persona, cuando no es llamada a otra parte para trabajar en otro objeto temporal, y al cual retorna en las épocas de descanso.

"2. Solo puede haber un domicilio.

". . . . . . . .

"7. El domicilio puede cambiarse solo mediante la unión del acto y del intento."

Las partes están contestes en que para adquirir un domicilio por selección voluntaria, es necesario que concurran dos requisitos, a saber: (1) presencia física y (2) intención de permanecer en el sitio seleccionado. Kennan, *On Residence and Domicile*, sección 13; 53 Harv.L.Rev. 68.

En cuanto al primer requisito no hay controversia. Aragón contrajo matrimonio en Puerto Rico y permaneció aquí durante dos meses después de su boda. ¿Qué prueba hay en cuanto al segundo requisito? El récord demuestra que Aragón regresó a Puerto Rico en 1947 a pasar sus vacaciones de Navidad. También demuestra que durante el juicio celebrado en este caso en marzo de 1952, la querellante y su esposo declararon que en diciembre de 1945, cuando formalizaron su compromiso amoroso, resolvieron establecer su domicilio en Puerto Rico y que dicho domicilio quedó establecido cuando contrajeron matrimonio.([5]) Sin embargo, tales manifestaciones, hechas después que surgió una controversia en cuanto al domicilio de la querellante, no deben beneficiarle o serle de tal utilidad, al extremo de que las mismas se consideren casi decisivas en la determinación de la controversia.

---

([5]) Según se desprende de sus conclusiones el tribunal a quo dió gran valor probatorio a estos testimonios y al efecto dijo: "Desde diciembre de 1945 los novios habían resuelto establecer su domicilio en este país; . . . . . ." "En el verano de 1945, . . . . . Aragón y ésta hicieron planes para casarse y establecer su domicilio en Puerto Rico, construyendo aquí en su oportunidad, y en el solar que José María González, padre de la novia, había donado a ésta, su vivienda." "En el verano siguiente, sin haber cambiado tales planes, los novios contrajeron matrimonio y aquí establecieron su residencia permanente." El domicilio de los esposos Aragón—González continúa siendo el escogido por ellos en el verano de 1946. Era el mismo durante todo el año 1947, cuando cursó el último año de medicina en Long Island University."

*Viles* v. *City of Waltham*, 32 N. E. 901; *Ayer et al* v. *Weeks*, 18 Atl. 1108; *In re Dorrance's Estate*, 163 A. 303; 28 C.J.S., sección 18(*b*), pág. 43; 17 Am. Jur. sección 88, pág. 641. Véase, además, 61 Harv.L.Rev. 1232, 1237.

■ Fuera del hecho de que Aragón vino a Puerto Rico en las Navidades de 1947, no queda ninguna otra prueba indicativa de su intención de establecer aquí su domicilio. A falta de esa prueba no podemos convenir con la querellante apelada en que su domicilio en Puerto Rico quedó debidamente probado. La prueba en conjunto revela que Aragón ya desde el 1943, por lo menos era y hasta después de 1947, continuó siendo residente en el Estado de New York, que a su vez era la residencia de la querellante, a partir de la fecha de su matrimonio. Por lo tanto, la contribución sobre ingresos para el año 1947 debe ser calculada a la querellante apelada a base de los dos tipos, el fijo de 29 por ciento y el utilizado por ella al rendir su declaración.

*Debe revocarse la sentencia apelada y devolverse el caso al tribunal de origen para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Asociado Sr. Negrón Fernández disintió en cuanto al pronunciamiento sobre la insuficiencia de la prueba para establecer la residencia de la peticionaria en Puerto Rico.